## Ballentine *et al. versus* Robinson *et al.*

*Measure of damages on contract for manufacture of specific article.*

Where the manufacturer of an article ordered, has completed it, and upon notice of its completion the buyer refuses or neglects to pay for and take it, the maker may sue for its value, and the measure of damages is the contract price.

ERROR to the District Court of *Allegheny county.*

This was an action of *assumpsit* brought by William C. Robinson, P. H. Miller, Witherow Douglass, and Wilson Miller, partners doing business as Robinson, Douglass & Millers, against Nathaniel Ballentine and George Hutchinson, partners trading as Hutchinson & Ballentine.

The plaintiffs filed a declaration containing the common counts,

10 Wr.—12

which they afterwards amended by setting out the following special contract:—

" On the first day of May 1861, an agreement was made between the plaintiffs and the defendants, whereby the plaintiffs were to provide materials and construct for defendants a six-inch steam-engine with boiler and Gifford injector and heater, in consideration whereof the defendants were to pay plaintiffs five hundred and thirty-five dollars in cash on the completion thereof."

They then averred that they did in fact provide materials for, and construct and complete said engine, with boiler, injector, and heater as aforesaid, and had the same ready for delivery to defendants, to wit: on the 10th day of July 1861, upon the payment of said moneys, according to their agreement, yet the said defendants did not pay said moneys, nor any part thereof, &c. The second count in the amended *narr.* was for goods bargained and sold.

When the case came up for trial on the 29th of May 1863, the plaintiffs proved by their foreman a contract exactly corresponding with the one set out in the first count of their amended *narr.*; and that when the engine was completed they notified the defendants to come and pay for it and get it, but that they did not do so.

The plaintiffs were for a great many years largely engaged in manfacturing and vending steam-engines; at the time they brought this suit, and at the time of the trial, the engine above mentioned was in their hands.

When the plaintiffs had closed their testimony, the defendants made several offers in their defence, which were overruled by the court, and bills of exception sealed, but they were not assigned for error.

The defendants' counsel asked the court to instruct the jury " that the proper measure of damages in this case, is the difference between the price contracted to be paid for the engine, and the market price at the time the contract was broken." The court declined to charge the jury as requested, and instructed the jury that the measure of damages was the contract price of the engine with interest.

The error assigned was the answer of the court to defendants' point.

*Robb & MacConnell,* for plaintiffs in error.

*Hamilton & Acheson,* for defendant.

The opinion of the court was delivered, November 2d 1863, by STRONG, J.—The parties entered into a contract by which it was stipulated that the plaintiffs should furnish the materials and

[Ballentine *et al. v.* Robinson *et al.*]

construct for the defendants a steam-engine of a described pattern, for which the defendants engaged to pay the sum of $535 on its completion. The engine having been finished pursuant to the contract, and notice of its completion having been given to the defendants, they refused to pay the stipulated price. Hence this suit, in which the only question raised is, what is the correct measure of damages for such a breach of contract. That the plaintiffs had done all they were bound to do, that they had the engine ready for actual delivery, on payment of the sum agreed to be paid by the defendants, and that the defendants were under obligation to take it away and make payment, are established facts. It is now contended that the measure of damages recoverable is the difference between the price contracted to be paid for the engine and the market price at the time the contract was broken.

Where a sale of goods has been made and they have been delivered, it is plain the measure of damages for non-payment is the stipulated price. About that there is no difficulty. Doubts, however, have been entertained, where goods have been sold and not delivered in consequence of the refusal of the buyer to complete the contract. It has sometimes been said the standard for measurement is the excess of the contract price over the market value. Yet where the subject of the sale is a specific article, where the contract has been so far completed as to pass the property in the article to the vendee, the possession being retained only because the price is not paid, there seems to be no good reason why the vendor should not be permitted to recover the agreed value. He has fully complied with all that he was under obligation to do. He has parted with his property and given the full equivalent for the stipulated price. His right to the property having passed to the vendee, his right to the price would appear to be consummate. It is true, if the sale be for cash, the vendor may treat the goods as his own and sell them, on failure of the vendee to pay, in which case he can claim only the difference between the price for which he has sold, and the price promised to be paid by the first vendee. That difference completes his compensation. But the resale is only a mode of giving effect to his lien. It is not a rescission of the contract, so as to revest the property in the article sold in him, for if it were, he could not sue for the deficiency. The law does not compel him to resume the ownership of the property, and, of course, it ought not to take away his right to the price.

The present is not strictly the case of a sale. The plaintiffs agreed to build the engine according to directions of the defendants, and to furnish the necessary materials for it. When it was completed the defendants had notice, and were bound to take it away and pay the contract price; but instead of taking

it and paying the price, they requested the plaintiffs to sell it. In such a case the right of property was clearly in them on notice of the completion of the article. The materials of which it was composed may fairly be said to have been delivered when they were put into the engine. The defendants alone were in default. They ought not to be permitted to compel the plaintiffs to purchase from them. Retaining a lien on the engine for the price, the plaintiffs were at liberty to sell it anew, or, at their election, to obtain full compensation from the defendants for their breach of contract. There can be no just reason why they should be compelled to accept the engine as part payment, which they virtually must do, if they can recover only the difference between its market value and the sum the defendants agreed to pay. And why should they, without any default of their own, be subjected to the risk and trouble of a resale, for the defendants' benefit? Besides, it may well be, that the article manufactured according to order may have no market value, and would be worthless on the manufacturers' hands. This engine was not made for sale in the market. It was built according to instructions given by the defendants, and, it may be presumed, for their peculiar use. The just rule, therefore, plainly is, in such a case, where the manufacturer of an article ordered, has completed it, and given notice of its completion, that he should be allowed to sue for the value, and recover, as its measure, the contract price. And such is the doctrine laid down in the better decisions. Thus it was decided in Bement *v.* Smith, 15 Wendell 493, where the cases are reviewed, and the rule is thus stated in 2 Parsons on Contracts 483, and in Sedgwick on Damages 281.

The instruction given in the court below was therefore right.

The judgment is affirmed.