ADDISON P. BREWER v. THE MICHIGAN SALT ASSOCIATION.

*Contract of sale—Transfer of title—Change of possession—Bailment with vendor—Liquidated damages.*

The question whether a contract of sale operates as an immediate transfer of title, is to be determined by the intent of the parties as gathered from the contract.

The fact that there is no change in possession is not conclusive against a change of title.

The defendant, a corporation, made a contract with manufacturers of salt whereby it was to take all the salt manufactured by them; to make to each a specified advance on all received; to sell when and where it pleased; to account for sales from time to time and pay over to the manufacturers ratably; the salt to become the property of the association as soon as inspected and branded, but the manufacturer to furnish storage for it and be responsible for it until delivery. A certain quantity belonging to a manufacturer, after being inspected and branded and while it remained on his premises, was accidentally destroyed by fire. *Held*, that the defendant had become owner, and was liable to pay for the salt as it would have been on a sale.

The responsibility of the manufacturer while the salt remained on his premises was that of bailee only.

The contract of sale contained a clause that in case of failure on the part of the manufacturer to deliver to the defendant all the salt made at his works, or in case he should sell or deliver salt to others, then in every such case he should pay to defendant ten cents per barrel as settled and liquidated damages for each barrel of salt otherwise sold and disposed of. This clause is to be understood as applying to salt not inspected or branded; it does not authorize the manufacturer to sell that which has become the property of defendant.

Case made from Saginaw. Submitted January 10. Decided January 25.

Assumpsit. Plaintiff had judgment below. Affirmed.

*W. S. Tennant* and *Benton Hanchett* for plaintiff. Where property under contract of sale is destroyed the question as to whether buyer or seller shall bear the loss is determined by the fact as to which has the title at the time, and this may be fixed by their agreement as to when the purchaser should receive title: *Whitcomb v. Whitney* 24 Mich. 486; *Lingham v. Eggleston* 27 Mich. 324; *Wilkinson v. Holiday* 33 Mich. 388; *Kling v. Fries* id. 278; *Terry v. Wheeler* 25 N. Y. 520; *Joyce v. Adams* 8 N. Y. 291; *Morrow v. Campbell* 30 Wis. 90; *Morrow v. Delaney* 41 Wis. 159; *Wing v. Clark* 24 Me. 372; *Tarling v. Baxter* 6 B. & C. 360; Benj. Sales §§ 232–4; *Russell v. Carrington* 42 N. Y. 118; *Graff v. Fitch* 58 Ill. 373; *Lansing v. Turner* 2 Johns. 13: *Goddard v. Binney* 115 Mass. 450; *Scotten v. Sutter*

37 Mich. 531; a clause in the contract of sale providing that the vendor shall be responsible for the merchandise until it is delivered, may make him the purchaser's bailee: *Barrow v. Window* 71 Ill. 219; Benj. Sales 630; if the purchaser does not take it away within a reasonable period after notice to do so, the vendor's responsibility ceases: *Dustan v. McAndrew* 44 N. Y. 72; *Mason v. Decker* 72 N. Y. 595; *Baglay v. Findlay* 82 Ill. 524.

*Wisner & Draper* for defendant.

COOLEY, J.   The plaintiff institutes this suit to recover of the defendant the value of a quantity of salt manufactured by himself and accidentally destroyed by fire after, as he claims, it had been sold by him to the defendant.   The controversy turns in the main on the question whether, under the peculiar facts of the case, the title to the salt had passed to the defendant before the fire took place.

The facts are agreed upon, and they are as follows:

1st.   The defendant is a corporation organized under chapter ninety-five of Compiled Laws, under the corporate name of "The Michigan Salt Association."   It is not engaged in the business of manufacturing salt, but is, and was engaged in the year 1878, in the business of selling salt and the transportation of its products to market. . The purpose of its organization, as expressed in article 2 of its articles of association, is as follows:

"The purpose for which this association is formed is the manufacture of and dealing in salt, and to engage in the transportation of its products to market."

2d.   Plaintiff in 1878 was a member of the association and one of its directors.   Any member of the association, being a manufacturer of salt within the State, is eligible as a director.

The following is a portion of article one of the by-laws of the association:

"Any manufacturer of salt in this State is entitled to become a stockholder in this association by signing the articles of association on its books, and designating the number of shares taken, which shall not exceed two shares of the capital stock for every barrel of the average daily capacity of his manufactory, on a fair estimate.   From the proceeds of the salt sold there shall be paid an annual dividend of 12 per cent. to each stockholder on the amount paid in, payable on the

15th day of July and January of each year, which, together with all losses sustained, and all costs and expenses incurred in handling and selling, together with the inspection fees, shall be charged up as expenses to the salt handled before a division of proceeds of sale is made."

3d. The following is a copy of the contract entered into between the parties January 17, 1878:

"This agreement, made this 17th day of January, A. D. 1878, between the Michigan Salt Association of the first part, and Addison P. Brewer, party of the second part, witnesseth as follows:

"Whereas, said first party has become and is a corporation under the laws of Michigan, formed for the purpose of manufacturing and dealing in salt, including the shipping and sale of salt; and whereas, the party of the second part is engaged in the manufacture of salt, and propose to place the entire product of such manufacture of said second party in the hands of said first party, to be disposed of and accounted for in accordance with the by-laws of said first party, which by-laws said second party has examined and knows the contents thereof; now, to effectuate such intent, it is agreed between said parties as follows: Said second party agrees that he will make salt solely on account of said party of the first part of the best quality of the kind manufactured by said second party; that he will not sell or pledge any salt made by or for him, but deliver the same to said first party, upon the terms offered by the said first party, in accordance with its charter and by-laws; and that he will generally, in all respects, conform to the by-laws of said first party, and the rules and regulations which may be adopted by the board in conformity with the true intent and meaning of the articles of association and by-laws of said party of the first part.

"Said first party agrees to receive said salt, so to be delivered by said second party, and sell and account for the same to said second party in accordance with the regulations and by-laws of said first party. It is further agreed that in case of the failure on the part of the second party to deliver all the salt made at his works to said first party as herein provided, or in case said second party shall sell or deliver salt to others, made by the said second party, in every such case the said second party shall pay to said first party the sum of ten cents, for settled and liquidated damages, for each barrel of salt otherwise sold or disposed of, and in case of any action for a breach of any part of this contract, such action shall not be deemed to put an end to the contract, but the same shall continue in force until the expiration of the term herein provided for, and successive actions may be had for successive breaches thereof, in case the same shall occur. It is also agreed that this contract shall continue in force until the first day of March, A. D. 1879.

"In witness whereof, the said first party has caused this agreement to be signed by its president and countersigned by its secretary and said second party.

W. R. Burt, President.
A. P. Brewer.

"D. G. Holland, Secretary."

4th. This agreement is the same, except in the name of the plaintiff, as defendant made with all persons whose salt was handled by the association, and under similar contracts the association handled nearly the entire product of salt

manufactured in the Saginaw valley, and is in the form prescribed in the by-laws of the association.

The following is article 7 of the by-laws of defendant:

"Every manufacturer, in becoming a member of the association, shall execute and deliver to it a contract for all salt manufactured by him or them, or a lease of his salt-manufacturing property, including all apparatus and appurtenances thereunto belonging for the purpose of manufacturing, such contract or lease shall be for the term of two years, or until the dissolution of the association, and shall not impose any restriction that will prevent the manufacture of salt at any and all times.

"Each and every stockholder shall manufacture salt for this association on the terms and conditions, as follows:

"That he will make salt solely on the association's account, of the best quality of the kind manufactured by him, according to the conditions of his contract or lease."

That the following is a copy of articles 8, 9, and 10 of the by-laws of said defendant:

*Article 8.* The board shall determine the rate of advance, with interest to be charged on the same, which the association shall make on salt, which may be changed from time to time, but shall not be less than eighty cents (80c.) per barrel on fine salt to the time of the annual meeting in 1876, and which shall be payable on the 17th day of each month, if a business day, if not, the first business day thereafter, upon all certificates which shall have been filed with the secretary on or before the 3d day of the month, and notice given that such advances will be required; *provided,* that this association shall receive no salt that is not plainly branded, especially with the manufacturer's brand. All salt shall become the property of this association as soon as inspected and branded by the inspector, but the manufacturer shall be responsible for the same until it is delivered at his expense, to the association's order, alongside of such vessel, lighter, or car, as the association may send for the same, after which the association shall dispose of it to the best advantage, paying all further charges thereon; but all salt made for the association shall be removed within a reasonable time after the same is ready for shipment.

*Article 9.* On or before the 20th day of each month the secretary shall deliver to each stockholder or manufacturer of the association a general statement, showing the quantity of each kind of salt inspected for the association, and the quantity of each kind on which it is possible to give accurate returns, sold during the preceding month, with all the expenses, home and foreign (with principal items), attending the same, so as to show the net average price of salt for the month. With such statement the secretary shall also render each concern interested, his or their account of sales for the month, reported in the general statement, which shall be made up as follows: Each month's receipts of the salt shall be sold and accounted for separately; each concern's proportion of the month's sales shall be the same as his proportion of the salt inspected for him during the month in which the salt so sold was received by the association, and any salt remaining over unsold at the end of any month, received during such prior month, shall be accounted for upon the ascertained proportions of such prior month before the sales of the succeeding month shall be accounted for. The sum arising from the sale of such concern's share of the quantity sold of the preceding month, and of the sales of the month reported, shall be passed to its credit, and the balance to its credit shall be paid on the 3d day of the following month.

*Article 10.* Every manufacturer of salt for the association shall store his entire product under good, tight sheds, to the end that all the salt

handled by them shall always be bright and in good order.    The manufacturers shall keep the wharves attached to their premises in good repair, and failing to do so, the association may repair the same and charge the expenses to the concern using them.

5th.    The plaintiff under this contract manufactured and delivered to the defendant, during the season of 1878, upwards of thirty thousand barrels of salt, which were barrelled, inspected, and branded and credited to the plaintiff, by the defendant, and monthly reports were made by defendant showing the quantity of salt received from the plaintiff each month, also the entire product of salt received from all manufacturers each month, the quantity sold, the gross receipts of the sales, the average gross price per barrel, the freight, commission, home charges, interest and insurance and total charges per barrel, and the average net price per barrel of all salt received and disposed of by the association, and the quantity still on hand, and also gave the plaintiff credit for his advances at sixty cents per barrel for all salt so furnished by him, inspected and branded each month, and balances due him upon sales after deducting the gross charges from the gross price per barrel, allowing him the average net price per barrel, according to the ratio for each month—according to the provisions of the by-laws of said association.

That under these by-laws the association treated each month's receipts of salt received from the manufacturers as in one common pool, which must be sold and accounted for before the salt so received any succeeding month was so treated as sold, and to be accounted for with the manufacturers.    That in the business of said association, the salt received any given month, is usually not reported as sold and the proceeds accounted for, from two to three months after the receipt of the same by the association, and interest is charged each manufacturer on all advances received by him upon salt so inspected and branded.

That even if the identical salt furnished by any manufacturer is shipped by the association and sold the same month it is manufactured, no return would be made to the manufacturer for such salt during that month, but the receipts would be taken to make up the average price of the salt received by the association some prior month, and when the association in its business management reached salt sales for the month current with that when said salt was received as the property of the association by being inspected and branded, such salt would be acounted for without reference to the price it in fact brought when sold by the association,

but based solely upon the average sales of salt taken to make the average sale for such month.

That all the salt when inspected and branded is under the control of the association as to the manner and time of its shipment.

That the association is accustomed to insure all salt when shipped, and in case of loss, such salt is treated as sold, and as the proceeds for sales for such month are reduced, if loss is not covered by insurance, the loss, if any, is borne ratably by each manufacturer having salt in the common pool for that month's sales.

That the association has no place kept for the storing of salt, but the salt is required to be stored by each manufacturer until shipment, as provided in the by-laws of the association, articles 8 and 10.

6th. That the plaintiff in the month of October and prior to about the 10th of October, 1878, had manufactured about 3000 barrels of salt and the same had been inspected and branded, and was in barrels and stored in the plaintiff's storehouse ready for shipment, and held by plaintiff subject to defendant's order, and being ready for delivery, upon car or vessel, whensoever demanded by defendant. That in the November statement, so furnished plaintiff by defendant, credit is given for the October salt and advances are allowed at the rate of sixty cents per barrel, and the amount of such advances were received by plaintiff in November.

That a portion of this salt was shipped by defendant in the month of November, and the balance received in the storehouse of plaintiff, awaiting shipment and subject to defendant's order.

That December 4th, 1878, nineteen hundred and thirty-nine barrels of the salt so received in October, 1878, being barrelled, inspected and branded, and stored in the storehouse of plaintiff, and held by him subject to defendant's order, was destroyed by fire without the fault or negligence of the plaintiff. That the defendant thereafter, in its December statement, deducted from plaintiff's statement of salt furnished and on hand and held by defendant, the nineteen hundred and thirty-nine barrels of salt so burned, and took from the moneys otherwise due the plaintiff in its statement given as final account of said salt so received under said contract, the sum of thirteen hundred and fifty-five and 60-100ths dollars, and all salt received by the association for the year 1878 had been sold and accounted for before this suit was commenced, except the 1939 barrels of salt so

charged as burned—and plaintiff is entitled to recover this sum, if this burned salt was not properly charged against him as his loss by reason of said fire.

7th. That about October 10th, 1878, Dwight G. Holland, then secretary of said association, whose duty it was to look after the shipment of salt for the association, told the plaintiff that the association desired to take all salt thereafter manufactured by him during that season, in bulk, and not in barrels, for shipment on cars, and the salt on hand and barrelled having been inspected and branded and then in the plaintiff's storehouse, the association desired to delay the shipment of such salt and the same should remain in plaintiff's storehouse to await the convenience of defendant in shipping, but that the association would ship said salt so stored in season for plaintiff to use his storehouse for storing his salt manufactured during the winter, to which proposition the plaintiff then assented, and thereafter the association took plaintiff's salt so manufactured after this date and not being barrelled, in bulk, and the salt so burned, was a portion of the salt referred to in this conversation, and then barrelled and stored in said storehouse, but, at the time such salt was burned, the time for packing the winter's salt had not arrived.

It is also agreed that if the plaintiff is entitled to recover upon these facts he is entitled to a judgment for the sum of $1355.60 and interest at seven per cent. from July 15th, 1879, that being the date of the commencement of this suit.

The circuit court was of opinion that, upon these facts, the plaintiff was entitled to recover; and in this opinion we concur.

The salt it appears was inspected and branded in the month of October, 1878. According to the by-laws, "all salt shall become the property of the association as soon as inspected and branded;" and *prima facie* this would seem to determine the question at issue. It is not conclusive, however, for it may appear on an examination of all the papers that it was not the intent of the parties that the title should pass on mere inspection and branding. And the intent in such cases must control, when we reach it. *Scotten v. Sutter* 37 Mich. 526, and cases cited.

The fact that no change in the possession would take place at the time of the branding is a circumstance of

importance as indicating an incomplete transaction; but as we have had occasion to show in other cases, is not conclusive. *Lingham v. Eggleston* 27 Mich. 324; *Wilkinson v. Holiday* 33 Mich. 388. See *Rohde v. Thwaites* 6 B. & C. 388; *Terry v. Wheeler* 25 N. Y. 520; *Goddard v. Binney* 115 Mass. 450. There are other circumstances having a contrary tendency which are far more significant. Of these we may enumerate the following: The defendant paid the advance agreed upon of sixty cents a barrel; it required the salt to be carefully stored with a view to preservation in its purity; it stipulated for the right to enter upon the plaintiff's premises and put them in suitable condition for the proper storage and protection of the salt, if there should appear to be need for it: it had under the contract the right to dispose of the salt when and where it pleased, and to postpone doing so at discretion; and when a sale should be made, it would be of this salt, not as a separate quantity, but of this as a part of its general sales for the month or year, and the accounting would be no more governed by the price received for this, than by that received for any other salt disposed of during the period. The defendant would determine for itself, the price at which the sale should be made, and the plaintiff, except in his character as a member of the association, could in no way control or influence the price, or hurry or retard the putting of the salt on the market, and he had reserved to himself no power to rescind the arrangement and terminate the defendant's control. And it may well be asked what sort of title a man can have to goods which another has irrevocable authority to sell at discretion, when, where, on what terms and at what price he shall be pleased to dictate? It certainly cannot be a title with the customary incidents of ownership, or any title known to the law.

Importance is attached by defendant to the provision of the contract that "in case of the failure on the part of the second party to deliver all the salt made at his works to said first party, as herein provided, or in case said second party shall sell or deliver salt to others, made by the said second party, in every such case the said second party shall pay to

said first party the sum of ten cents for settled and liquidated damages for each barrel of salt otherwise sold or disposed of." It is argued that this recognizes the authority of the manufacturer to sell his own salt in disregard of his agreement with the defendant, and so no doubt it does; but he cannot sell to others that which has already become the property of the defendant; and the terms of this provision are fully answered in applying them to salt not inspected and branded. Attention is also called by counsel to the clause in the by-laws, that the manufacturer shall be responsible for the salt "until delivery;" but this would make him responsible as bailee only, and not for losses occurring without his fault.

It does not strike us that there is anything in the arrangement between the parties that is difficult to understand, or that presents serious legal difficulties. The scheme is simple enough. It contemplated the handling of the salt product of the State by a single association, who should take it from the manufacturers as its own property as fast as it should be inspected, and sell when and where the market was satisfactory. For the convenience of the association the manufacturer furnished storage for a time, and the association paid to him a sum probably large enough to cover the cost of making. The profits of the sales, when eventually made, would be apportioned among the manufacturers according to the quantity received from each; the association disposing of the whole, and accounting therefor in accordance with its by-laws. When the association shipped the salt it took out insurance, and if a loss occurred, the insurance money was accounted for as received on a sale; but if insurance was neglected and a loss occurred by fire, the loss was borne ratably by the manufacturers, as it must have been had a sale been made without realizing the purchase price. The association was thus buyer from all, and at the same time seller for the common and ratable benefit of all.

The judgment must be affirmed with costs.

The other Justices concurred.