### HAYNES *v.* QUAY.

SALE—GOODS TO BE MANUFACTURED—TITLE—DELIVERY.

> On a sale of goods to be manufactured, title will not pass where the seller, instead of setting them aside for the purchaser, as soon as they are made uses them for another purpose.

Error to Cheboygan; Shepherd, J. Submitted June 5, 1903. (Docket No. 39.) Decided July 14, 1903.

Replevin by Frank J. Haynes, Fred R. Haynes, and William J. Haynes, copartners as F. J. Haynes & Company, against Lafayette Quay, Edward Quay, and George Quay, copartners as D. Quay & Sons, John A. Jamieson and Thomas Woodfield, copartners doing business as the Neebish Lumber Company, Briggs & Cooper Company, Limited, and the Michigan Central Railroad Company. From a judgment for defendants on verdict directed by the court, plaintiffs bring error. Affirmed.

*Stevens, Graham & Stevens* (*Frost & Sprague*, of counsel), for appellants.

*C. S. Reilley* (*Henry Hoffman*, of counsel), for appellees.

CARPENTER, J. This is a replevin suit for two car loads of shingles, which it was claimed plaintiffs bought

from the Neebish Lumber Company, a copartnership composed of defendants Jamieson and Woodfield. At the conclusion of the plaintiffs' case the trial court directed a verdict for the defendants on the ground that the title to said shingles had not passed to the plaintiffs. The only question presented on this appeal is whether or not that ruling was correct.

According to the testimony of the plaintiffs, the terms of their contract, by which they acquired their rights to said shingles, are contained in a letter written by plaintiffs to said Neebish Lumber Company, June 21, 1901, and are as follows:

"We agree to take your output of shingles, estimated from $2\frac{1}{2}$ to 3 million, to be manufactured at Cheboygan this season, and made strictly to the following grades, for which we will pay the following prices: 8-inch clear and better, at $2.10; 5-inch clear, at $1.40; sound butts, at $ .60. Above prices are f. o. b. rail of vessel at Cheboygan; same to be paid for in 60 days from date of shipment, or $1\frac{1}{2}$ per cent. discount in 10 days. You agree to have the shingles well manufactured, up to grades, and will have Mr. Tremaine look after the making of same, as talked with Mr. Jamieson. You are to start making the same on or about July 1, 1901, or as soon as possible thereafter. You are to brand the shingles with our brand, the stencil to be furnished by us."

It is the claim of plaintiffs that the language above quoted, construed in connection with the conditions and circumstances known to both parties to the contract, bound the Neebish Lumber Company to sell, and plaintiffs to buy, all the shingles which might be manufactured from a certain cut of logs at St. Ignace. Only a part of these logs, namely, enough to make 1,043,000 shingles (which were delivered to plaintiffs), were sawed in the season of 1901. Plaintiff Haynes testified that in February, 1902, he had a talk with defendant Jamieson "relative to the balance of the shingles. * * * And I asked him if he would have the shingles cut out for us early in the spring, as we needed them. He said it would depend

upon when Quay [the mill owner at Cheboygan] would cut them." March 27, 1902, Quay commenced to manufacture shingles from the remaining logs. Instead of branding them with plaintiffs' brand, as agreed in the letter heretofore referred to, he put Jamieson's brand on them. Plaintiffs were at once notified of this, and inferred from it that defendants Jamieson and Woodfield did not intend to fulfill their contract; and thereupon the former wrote the latter, protesting against this conduct, and giving notice that they would insist upon their rights. To this letter no reply was received. The shingles, after they were cut, were graded, and piled upon the dock at Cheboygan. Some of them were branded "Briggs & Cooper," to whom they were subsequently shipped, and some were branded "J. A. Jamieson." Under instructions of the Neebish Lumber Company, they were loaded on cars for shipment. While they were on said cars, this suit was commenced.

The contract which gave plaintiffs their rights was not a contract for the sale of goods in the condition in which they were to be delivered. It was a contract for the sale of goods to be manufactured. The law which determines when the title to such goods shall pass is stated by Mr. Mechem as follows:

"Where goods are to be manufactured, title ordinarily does not pass until goods are completed and delivery tendered. * * * Under a contract for the manufacture of an article,—as for the building of a ship, or the construction of any other chattel not existing in specie at the time of making the contract,—it is the general rule that no title vests in the purchaser during the progress of the work, nor until the chattel is finished and delivered, or at least is ready for delivery, and by tender or other equivalent act is appropriated to the buyer." 1 Mechem, Sales, § 754.

This statement of the rule seems to be entirely consistent with the decisions of this court relating to the sale of goods to be manufactured. See *First Nat. Bank of Marquette* v. *Crowley*, 24 Mich. 492; *Whitcomb* v. *Whitney*, Id. 486; *Brewer* v. *Salt Ass'n*, 47 Mich. 526

(11 N. W. 370); *Jenkinson* v. *Monroe Bros. & Co.*, 61 Mich. 454 (28 N. W. 663).

This case closely resembles that of *Whitcomb* v. *Whitney, supra,* but it is distinguished from that case by this very material circumstance: In that case the articles in a condition for delivery were by the seller set apart for the buyer. In this case nothing of that sort occurred. The sellers, instead of setting these shingles apart for the purchasers, undertook, as soon as they were made, and to the purchasers' knowledge, too, to use them for another purpose. In other words, every act of the sellers after the shingles were manufactured indicated their intent that the title should not pass to the plaintiffs.

It is no answer to these views to urge that the Neebish Lumber Company had agreed that the title to the shingles in suit should pass to the plaintiffs when the logs were cut into shingles, graded, piled, and counted upon the dock. This agreement to sell was executory. The title to the shingles did not pass thereby until the sellers did something equivalent to a delivery to the purchasers. This, as we have already indicated, they never did. If the contract is to be construed as plaintiffs contend, the Neebish Lumber Company violated its agreement by refusing to deliver the shingles, and is responsible in damages therefor.

We are of the opinion, therefore, that the trial judge correctly decided that the title to the shingles did not pass to the plaintiffs, and the judgment of the court below will therefore be affirmed.

The other Justices concurred.