KINKEAD v. LYNCH et al.

(Circuit Court, D. Nevada. September 24, 1904.)

No. 765.

1. DAMAGES—RULES FOR MEASURING.
    General rules as to the measure of damages cannot be formulated to govern all cases; and where the damages in a given case may be estimated in a variety of ways, as frequently occurs, that method will be adopted which is most definite and certain.

2. SALE—REFUSAL OF PURCHASER TO ACCEPT ARTICLE MANUFACTURED—MEASURE OF DAMAGES.
    Where the purchaser refuses, without legal justification, to accept an article, manufactured on his order, when tendered, the vendor may, at his election, retain the property for the purchaser, and sue for and recover the contract price as the measure of his damages; and this rule is especially applicable where the article was made for a special use or place, and presumably would not have a market value.

At Law. On motion for new trial.

Alfred Chartz, for plaintiff.

Cheney, Massey & Smith, James G. Sweeney, and R. L. Price, for defendants.

HAWLEY, District Judge (orally). There are but two questions involved in this case that I shall consider upon this motion: (1) What was the nature of the contract sued upon? (2) Was the verdict of the jury excessive?

The amended complaint alleges:

"1. That on or about the ———— day of July, 1903, at Virginia City, Nevada, plaintiff and defendants, Thomas J. Lynch and M. O'Meara, through their duly authorized agent, Henry J. Kinkead, entered into a verbal contract whereby plaintiff agreed to construct and equip a quartz mill, known as and called a 'Kinkead Mill,' the same to be of the capacity of thirty tons per day of twenty-four hours, and that at said time no price was set for the same, but that subsequently, and before any machinery was supplied therefor, plaintiff informed said defendants, Thomas J. Lynch and M. O'Meara, by letter that the price and cost would be over $20,000. That it was agreed that plaintiff should purchase in the name of said defendants, Thomas J. Lynch and M. O'Meara, lumber, timbers, and other building material for the proper erection of said mill, and ship the same to Tonopah, Nevada, and that they should pay for the freight and for said material, and should pay for the labor employed in the erection of the same, and that said mill should be erected in accordance with the plans and specifications drawn and furnished by plaintiff for the erection of the Kinkead system of mills for the reduction of ores. (2) That under and by virtue of said agreement with said Thomas J. Lynch and M. O'Meara, through their said agent, Henry J. Kinkead, plaintiff proceeded to perform his part of said agreement, and he drew plans and specifications for the erection of a Kinkead mill, and he purchased lumber, timber, and other building material, and framed timber for the erection of said works, and shipped the same to said defendants at Tonopah, Nevada, and sent competent workmen to erect said mill; and said plaintiff purchased and had manufactured machinery proper and suitable for the operation of the Kinkead system of ore reduction, and shipped to said defendants at said Tonopah parts of the same from Virginia City, Nevada, and part from San Francisco, California; and part of said machinery was placed in position in said mill building, and part of said machinery plaintiff had manufactured at Carson, Nevada, and is now held ready for shipment to said defendants under and by virtue of said agreement—for all of which said defendants have paid, except for all said machinery. (3) That on the 28th day of September, 1903, said defendants, Thomas J. Lynch and M. O'Meara, ordered said plaintiff to stop the shipment of said machinery, or any part thereof, for the construction of said mill, and refused to accept any further machinery under said agreement, to the damage of plaintiff in the sum of ten thousand dollars."

The first portion of this complaint, standing alone, would convey the idea that plaintiff was to construct and equip a quartz mill, and would be subject to the criticism of counsel; but an examination of the entire complaint shows that it is a sort of prelude to the real contract upon which plaintiff relies, to wit, "that it was agreed that said plaintiff should purchase in the name of said defendants," etc. The testimony offered by the plaintiff tended to support this theory of the contract. There was, therefore, no variance upon that ground between the pleadings and the proofs. The conflict in the testimony upon this point was settled by the jury in favor of the plaintiff, and the verdict upon that ground will not be disturbed.

It is claimed that "the verdict of the jury was contrary to the evidence, and not according to law"; that, in any event, "it was excessive." This view of the case is sought to be maintained upon the ground that as to such portion of the machinery, etc., as was ordered by the defendants not to be shipped to Tonopah, the plaintiff remained in possession of the property, and was only entitled to recover as damages "the difference between the contract price and the market value of the articles." From the testimony it appears that the value of the materials procured by the plaintiff, and shipped to Tonopah, and there accepted and not paid for by the defendants, was $2,282.72. To this extent it is admitted that, if plaintiff is entitled to recover anything, he could recover, and that the verdict for that sum would be sustained by the evidence. The articles unshipped, and which defendants ordered the plaintiff not to ship, were manufactured by order of the plaintiff at the railroad shops in Carson City, Nevada, viz., "one Kinkead mill, a crusher, six Kinkead amalgamating pans, and three settlers," of the value and cost of $7,600. The verdict of the jury was for the plaintiff, and the damages were assessed at $9,882.72, the full amount of both bills.

The only instruction of the court relating to damages was to the effect that if the jury, among other things, believed from the evidence "that James H. Kinkead did furnish and deliver the mills and machinery, etc., in accordance with the allegations of his complaint, or did notify the defendants that he was ready to furnish and deliver the same, and the defendants declined to receive the same by orders to make no shipments of machinery, then it will be your duty to find a verdict for the plaintiff, and assess such damages as you believe to be established by the evidence." It is not claimed that the court erred in giving this instruction, but it is seriously argued that, inasmuch as there was no evidence offered as to the difference between the contract price and the market value of the machinery, the allowance by the jury for the unshipped machinery for the full contract price was excessive, and ought not to be sustained. It may be that through the inadvertence of counsel and of the court the instructions of the court were not as thorough and complete as they might have been made had the court been requested to charge the jury as to the "true measure of damages," or the necessity of giving fuller instructions in regard to the damages, or to the distinction, if any, which existed between the articles delivered and accepted and the machinery that was manufactured and ordered by defendants not to be shipped. The fact is that the real contention of the parties at the trial was whether any contract was made by the defendants, they claiming that no such contract as plaintiff claimed was made at all, and that the materials that were furnished and delivered by the plaintiff were furnished and delivered and accepted by the O'Meara-Lynch Company, a corporation, and that the machinery ordered not to be shipped was manufactured for the corporation, and that the defendants could not be held individually responsible therefor. Upon these points

the lines were sharply drawn, and the instructions given by the court were full, fair, and impartial.

In the light of these facts, the court might be justified in refusing to grant a new trial herein, without considering the question as to the true measure of damages. I have, however, examined all the numerous authorities cited by defendants, and many others bearing upon the question under consideration, and am not prepared to say that the rule contended for would be applicable to the facts of this case. The true measure of damages in the event of a breach of contract for the sale and delivery of personal property is the loss that the seller has actually sustained by reason of the breach. And this, in a great variety of cases, is held to be the difference between the price fixed by the contract between the parties, and the market value of the property at the time of the breach. The following cases declare the rule contended for by defendants, and illustrate the kind and character of sales, agreements, and contracts in which it has been applied: Yellow Poplar L. Co. v. Chapman, 74 Fed. 444, 456, 20 C. C. A. 503; Newark City Ice Co. v. Fisher, 76 Fed. 427, 22 C. C. A. 261; Fell v. Muller, 78 Ind. 507, 512; 24 Am. & Eng. Ency. L. (2d Ed.) 1114 et seq., and numerous authorities there cited. But while this is the general rule, there are many exceptions to it, and the rule itself only applies to certain kinds and character of cases, and is not applicable to all. As every "tub," if sound, should be able to stand on its own "bottom," so every case must stand or fall upon its own peculiar facts. As was said by the Court of Appeals in Southern Cotton Oil Co. v. Heflin, 99 Fed. 339, 347, 39 C. C. A. 546:

"In applying rules as to the measure of damages the courts must have regard to the particular facts of the case in question. Each case is sui generis. The court should not attempt to formulate rules in one case to govern all possible cases. It could not be done successfully, any more than a definition of fraud could be formulated to cover all future cases."

The fact is, as has often been stated in the books, that cases not infrequently occur where the amount of damages may be estimated in a variety of ways. In all such cases the law uniformly adopts that mode of estimating the damages which is most definite and certain.

The facts, as testified to upon the trial, do not, in my opinion, bring this case within the general rule as contended for by defendants. According to plaintiff's testimony the articles making up the account of $7,600 were specifically manufactured for a certain purpose, by order of the defendants, which, in the very nature of their kind and character, could not, under ordinary circumstances, have had any market value independent of the particular kind of a mill for which alone they had been manufactured. The jury had the right to consider and determine this question. The defendants were notified that the machinery was ready to be shipped. The defendants ordered plaintiff not to ship it; that they would not pay for it, etc. By their refusal to receive the machinery the defendants repudiated their contract, and the plaintiff became entitled to sue for the value, without reference to the fact that the articles were only to be paid for on delivery, or after they were

tested by defendants. All subsequent conditions were waived by reason of their refusal to accept or pay for the articles. The general rule is that a chattel ordered to be manufactured continues to be the property of the manufacturer until it is completed and delivered or tendered. 1 Benj. on Sales, § 536; Tiedeman on Sales, § 89. The tender, if made and refused, takes the place of delivery and acceptance. In Hayden v. Demets, 53 N. Y. 427, it was held that upon a valid tender of specific articles under an executory contract of sale the title to the property passes to the vendee. It has frequently been held that, where the purchaser or vendee unlawfully refuses to accept property which he has ordered under an executory contract of sale, the vendor may avail himself of either of three remedies: (1) He may retain the property for the vendee, and recover the entire purchase price; or (2) he may keep it as his own, and sue for the difference between the market value, if there is any, and the contract price; or (3) he may sell the property, after the refusal of the contractor to take it, for the highest price he can get, and recover the balance of the purchase price. 24 Am. & Eng. Ency. L. (2d Ed.) 1119; Story on Sales (4th Ed.) § 314; Ozark Lumber Co. v. Chicago L. Co., 51 Mo. App. 555; Moore v. Potter, 155 N. Y. 481, 486, 50 N. E. 271, 63 Am. St. Rep. 692. In the present case there was sufficient evidence of an unequivocal renunciation of the contract by the defendants, and the election by the plaintiff to treat the contract as terminated was clearly shown by the prompt commencement of this action. Marks v. Van Eeghen, 85 Fed. 853, 855, 30 C. C. A. 208.

Another principle that is often referred to is that, where there is no market value, or where, under the terms of the contract, the market value is not an appropriate or adequate criterion of damages, the measure of damages is compensation for the actual loss suffered. 24 Am. & Eng. Ency. L. (2d Ed.) 1116, and authorities there cited. In Todd v. Gamble, 67 Hun, 38, 21 N. Y. Supp. 739, the court, after citing cases announcing the general rule as claimed by plaintiff, said:

"When the value of the article cannot be determined by what it will sell for in the market, it must be ascertained in other ways; sometimes by showing the cost of production."

Does not the testimony in the present case put plaintiff in the position of having fully performed his contract or agreement with the defendants, and establish the fact that he made a proper tender of the delivery of the property; and, if this be so, would not the rule applicable to the case be that he is entitled to recover the contract price, if there was any, and, if not, the value of the machinery as manufactured, as his measure of damages? The following cases, though not on all fours with the present case, contain a line of reasoning which naturally leads to the results I have stated, and are much closer in their facts to the case in hand than any of the authorities relied upon by defendants. Hayden v. Demets, supra; Higgins v. Murray, 4 Hun, 565, 568; Spicers v. Harvey, 9 R. I. 582; Shawhan v. Van Nest, 25 Ohio St. 490, 18 Am. Rep. 313; Bement v. Smith, 15 Wend. 493; Black River Lumber Co. v. Warner, 93

Mo. 374, 387, 6 S. W. 210; Ballentine v. Robinson, 46 Pa. 177, 180; Smith v. Wheeler, 7 Or. 49, 53, 33 Am. Rep. 698.

In Black River Lumber Co. v. Warner, supra, the court discussed the character of cases cited by defendant, which hold that there can be no recovery of the contract price of articles manufactured or produced until the vendee has accepted the property, and the fact that this rule is based on the ground that the title in those cases remained in the vendor and that the title must vest in the vendee before he could be made liable for the contract price; and also the rule as announced in 3 Pars. Cont. (5th Ed.) 209; Field on Dam. § 299; Sedg. on Dam. (6th Ed.) 337; and then said:

"Where, however, the subject-matter of the contract is a specific article to be manufactured by the vendor for the vendee, and the vendor has completed his contract, and performed all that the contract requires him to do, it is but just and fair that his damages in case of a refusal of the vendee to accept the article should be the contract price. The vendor will, of course, in such case, hold the property for the vendee. And so it has been held in a number of cases."

In Ballentine v. Robinson, supra, which is in many respects similar to the case at bar, the different rules were discussed. In the course of the opinion the court said:

"There can be no just reason why they [plaintiffs] should be compelled to accept the engine as part payment, which they virtually must do, if they can recover only the difference between its market value and the sum the defendants agreed to pay. And why should they, without any fault of their own, be subjected to the risk and trouble of a resale for the defendants' benefit? Besides, it may well be that the article manufactured according to order may have no market value, and would be worthless on the manufacturers' hands. This engine was not made for sale in the market. It was built according to instructions given by the defendants, and, it may be presumed, for their peculiar use. The just rule, therefore, plainly is, in such a case, where the manufacturer of an article ordered has completed it, and given notice of its completion, that he should be allowed to sue for the value, and recover as its measure the contract price."

Weighed by the principles announced in these authorities, the testimony given in this case was sufficient to support the verdict.

Motion for new trial denied.