PITTSBURGH HARDWARE & HOME SUPPLY CO. v. BOWN.

(Circuit Court of Appeals, Third Circuit. November 29, 1909.)

No. 13.

CORPORATIONS (§ 121*)—SALE OF STOCK—BREACH OF CONTRACT—DAMAGES.

In an action for breach of contract for the sale of stock by which the seller was to be paid a specified sum for a specified block of stock, a transfer of which he tendered to the buyer, the measure of damages was the contract price, and not the difference between such price and the value of the stock at the time of the alleged breach of contract.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 505; Dec. Dig. § 121.*]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action by David E. Bown against the Pittsburgh Hardware & Home Supply Company. Judgment for plaintiff, and defendant brings error. Affirmed.

McCook & Jarrett, for plaintiff in error.
Shiras & Dickey and James G. Marks, for defendant in error.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below David E. Bown sued and recovered judgment against the Pittsburgh Hardware & Home Supply Company for damages for breach of a written contract between them. Thereupon the latter sued out this writ, and the error now insisted upon is that the court allowed recovery of other than mere nominal damages.

The facts disclosed on the trial are these: In 1906 the hardware company bought from Bown a quantity of electrical goods, and in payment therefor issued to him 100 shares of its capital stock of the par value of $10,000. On April 16, 1908, the hardware company, being desirous of repossessing this particular stock, made with Bown the contract sued upon, wherein it was agreed that on the making of this contract Bown should surrender to the hardware company 6 shares of his said 100, and it should then pay him $600. This stock was surrendered and the money paid. The contract then provided Bown should within four months sell at wholesale jobbers' prices such portion of the electrical goods as remained on hand. If any thereof remained unsold at the end of that time, Bown was to take part of them at wholesale jobbers', and the rest at stipulated, prices. Whether he completed his contract in this regard was a contested issue in the court below, which the jury found in his favor. The contract further provided that, when Bown had disposed of the goods, the hardware company should assume payment of his demand note of $4,000, which was owing to a trust company, and as collateral for which the latter held 70 of Bown's said shares of stock covered by this contract. The hardware company also agreed it would then pay Bown $3,000 cash and $2,400 in 12 monthly installments of $200 each. This made up the $10,000, distributed as follows:

Hand money....................................................$   600
Assumption of Trust Co. note....................................  4,000
Cash upon sale of electrical goods.............................  3,000
Monthly installments, 12 @ $200................................  2,400
                                                               --------
                                                               $10,000

The contract also provided Bown should "surrender to the said supply company the 94 shares of stock above mentioned, 70 shares of which are now pledged as security for said note of the Guaranty Title & Trust Company."

Alleging full performance of the contract on his part, Bown brought suit for the recovery of $9,400 and before and on the trial tendered an assignment of the undelivered 94 shares of stock. On the trial the question arose as to the right of Bown to recover for the $2,400 payable in monthly installments which were not due when the suit

was brought. Whereupon the plaintiff withdrew that part of his claim, and judgment was entered "without prejudice to the right of plaintiff to recover said sum of $2,400 in any subsequent action or actions." This claim being withdrawn, the jury found a verdict for $6,000, for some reason of which, however, Bown does not complain, cutting down his claim about $1,000.

On the part of the hardware company, it is contended that the measure of damages was the difference between the contract price of the stock and its value at the time of the alleged breach of the contract, and that the plaintiff, having given no evidence of such value, was only entitled to nominal damages. In view of the provisions of this contract and of the acts of the parties in pursuance thereof, we are of opinion this contention cannot be sustained. The stock involved in this case was a specific lot of 100 shares owned by Bown. The proof was that the company wanted to buy Bown's stock, and so end his connection with the company as a stockholder, and the contract was made for that purpose. Moreover, that the company treated the contract as one whereby it acquired ownership of Bown's stock, and not a mere right to any stock was shown by the statement rendered to Bown a few days before suit brought, wherein he was given credit for his 100 shares of stock at $10,000, which sum was alleged to be overpaid by the hardware company by some $1,500. It is therefore clear that this was not the case of a sale of chattels of a general character, but was one whereby the vendor was to be paid a specified sum for a specified block of stock. On performance of the contract by him and default by the vendee, the contract price of the stock was the proper measure of his damages. Reynolds v. Callender, 19 Pa. Super. Ct. 610; Williams Co. v. Cleaver, 38 Pa. Super. Ct. 376; Ballentine v. Robinson, 46 Pa. 177; Wilson v. Whittaker, 49 Pa. 114; Pearson v. Mason, 120 Mass. 53.

We, accordingly, hold the judgment must be affirmed.