HYDREX SILENT EXHAUST WORKS *v.* SEAGER ENGINE WORKS.

1. NEW TRIAL—MOTIONS—NEWLY DISCOVERED EVIDENCE.
   On motion for a new trial on the ground of newly discovered evidence to the effect that articles sold by the plaintiff were not specially made, the fact that defendant had over eight months in which it might have discovered the evidence, and that it was cumulative in its nature, furnished sufficient reason for denying the new trial.[1]

2. SAME—EVIDENCE—MATERIALITY.
   Unless the evidence is material and likely to change the result it is not sufficient ground for a new trial.

3. APPEAL AND ERROR—REQUESTS—SAVING QUESTIONS FOR REVIEW —TRIAL.
   On error to review a judgment at law, the appellant is not entitled to reverse the judgment for failure to charge the jury, if no requests for instructions were filed.

4. SALES—ACTIONS—DAMAGES—RIGHTS OF SELLER.
   The seller of specially manufactured articles that have been refused by the purchaser has the remedy of retaining the property in the event of their destruction and suing for the entire purchase price, or he may sell the goods and apply the proceeds on account, or keep them and bring an action for the loss sustained.[2]

5. COMPROMISE AND SETTLEMENT—EVIDENCE—COLLATERAL ISSUE.
   Where plaintiff agreed to furnish silencers to be fitted to engines which defendant manufactured for a corporation that had common stockholders and officers with the plaintiff, and defendant claimed, in an action for breach of its agreement to receive the silencers, that plaintiff had compromised its claim with the purchaser of the engines, the court did not err in rejecting evidence of the alleged settlement, since it would tend to raise a collateral issue.

---

[1]Cumulative evidence as basis for new trial is discussed in note in 14 L. R. A. 609.

[2]On measure of damages for purchaser's refusal to accept goods specially manufactured for him, see notes in 4 L. R. A. (N. S.) 740, 18 L. R. A. (N. S.) 613.

Error to Ingham; Wiest, J. Submitted October 21, 1915. (Docket No. 129.) Decided December 21, 1915.

Assumpsit by the Hydrex Silent Exhaust Works against the Seager Engine Works for breach of a contract of purchase. Judgment for plaintiff. Defendant brings error. Affirmed.

*Clark C. Wood,* for appellant.

*Irvin Long* (*C. F. & E. T. Hammond,* of counsel), for appellee.

MOORE, J. The trial judge charged the jury in part as follows:

"The plaintiff, the Hydrex Silent Exhaust Works, a corporation, and manufacturers of the Hydrex silent exhaust silencer, claims that the defendant, the Seager Engine Works, a corporation, was employed to manufacture certain gasoline engines for the Lackawanna Manufacturing Company to be equipped with the Hydrex engine exhaust silencer, and to obtain the silencer their plant agreed with plaintiff upon terms of purchase, and gave plaintiff orders for 275 silencers to be specially made; that they manufactured the silencers ordered, and delivered 146 of them to defendant, for which the defendant has paid, and had the remainder for delivery and offered delivery of them to defendant, and defendant refused to take them; that, being a special make, the silencers were held in plaintiff's storeroom subject to defendant's order until the storeroom burned in January, 1914, when they were destroyed by fire.

"This suit was brought to recover the value of the silencers ordered by defendant and manufactured on such orders by plaintiff and refused to be taken and paid for by defendant. Defendant denies that it ever entered into contract with plaintiff, and denies that it ever gave orders of purchase of the silencers. It admits making a contract with the Lackawanna Manufacturing Company under which it was to manufacture gasoline engines for the Lackawanna Manufacturing Company to be equipped with silencers; that it was

agreed with Mr. Hall, who made the contract for the Lackawanna Manufacturing Company, and also was president and general manager of both the Lackawanna Company and the plaintiff company, that it would be absurd for the plaintiff company to sell silencers to defendant to go with the gasoline engines made for the Lackawanna Company, because, if that was done, a charge of 10 per cent. would have to be added merely for their passing through this shop, and because of the relations between the plaintiff company and the Lackawanna Company the silencers should be furnished to the Lackawanna Company by the plaintiff, and not by the plaintiff to defendant. Defendant also claims that the orders given by its purchasing agent to plaintiff for silencers were not purchasing orders, but were memorandum under the agreement with Mr. Hall that the plaintiff might know what silencers it furnished the Lackawanna Company through the defendant. * * *

"Plaintiff, in order to recover, must satisfy you by a preponderance of the evidence that there was a contract of sale of the silencers to defendant. A contract of sale, to be valid, must designate the kind of articles, the subject of the sale and the price to be paid; and such a contract may be partly in writing and partly verbal, provided it has been performed in part after its making. So in this case the parties were at liberty to contract for the silencers, and to agree verbally upon the price to be paid for the same. And if you find that with an agreement as to the price of the silencers to be paid for on orders given for the same defendant gave written orders for specified silencers, and such orders were accepted by plaintiff and performed in part by delivery of some of the silencers, then there was a valid contract, and, if plaintiff made the silencers under such a contract, then defendant was under obligation to take and pay for the same when offered delivery of what it had ordered. * * *

"You are to have in mind that, in order to make a contract binding between parties, the minds of the parties must have met upon the subject-matter of the contract. One may not be held to have made a contract unless it was his intention to make a contract. That intention is to be gathered from the writings entered

into, providing the writing covers the matter. In case the writing does not cover all of the claimed contract, and a part of it is claimed to have rested in mere words passing between the parties, then the jury should take into consideration, not only the writing, but all the evidence disclosed relating to the intention and understanding of the parties upon the question of contract or no contract.   *   *   *

"Was there a contract made between these parties? Was it understood and agreed between the defendant company and the plaintiff company that the silencers to be used upon the Lackawanna gasoline engine should be the silencer manufactured by the plaintiff company, and that this silencer should be sold and charged to the defendant company?   *   *   *

"Was there a contract under which plaintiff was to manufacture for defendant at agreed prices special designs of silencer, and under which defendant was to accept and pay for the same, or was the manufacture of silencers for the Lackawanna Manufacturing Company, and not for defendant, and the dealings between plaintiff and defendant relative to the silencers less than contract relations for the sale by plaintiff to defendant and purchase by defendant from plaintiff of the silencers in question?   *   *   *

"Was it the intention of these parties, the one in giving the order, and the other in making the silencer, that there was a contract binding upon the defendant to buy and take, and upon the plaintiff to make and to sell, the silencer in question? If any order was given as a purchase and accepted by the plaintiff, and the goods made and some of them delivered, and the rest of them ready for delivery and tender of delivery made, then there was a good contract. If the order was given, on the other hand, under an arrangement that it should operate merely as a memoranda, so that it might be known afterwards, in case of inquiry, what silencers, if any, were furnished to go with the Lackawanna Company engine through the shop of the defendant, and without a contract that such silencer should be paid for by the defendant company, then there was no contract upon the giving of these orders. I mean by that this: These orders may be explained. The defendant is at liberty to come in here and ex-

plain the circumstances under which they were given so far as such circumstances were known to the plaintiff. The defendant claims that the orders were given after an agreement between the defendant company and the plaintiff company that the silencers should be furnished, not to defendant company, but to the Lackawanna Company. * * *

"If the silencers were made to order, then, when completed and tendered defendant, in case they were tendered, and in case you find there was a valid contract, then they became the property of the defendant, and plaintiff might store them subject to defendant's order, and in case of their destruction by fire the loss was that of defendant, and does not excuse defendant from paying for the same.

"Now, it is the claim of the plaintiff in this case that this was an order for a specially made silencer, and because of its special make upon the order of the defendant it completed them and tendered them to the defendant company, and upon its refusal to take them, the title having passed, it held them as the property of the defendant company and subject to defendant's order; that in January, 1914, while they were being stored subject to defendant's order, they were destroyed by fire. If they were made upon the special order, a special design of silencers, if there was a valid contract between the parties, then it was the duty of the defendant to take them when completed and ready for delivery and, if it refused, and after that they were destroyed by fire, the loss must fall upon the defendant. * * *

"The item I have just given, being the amount claimed by the plaintiff, is $439.75. The defendant claims it does not owe the plaintiff anything, and that the payments made upon the silencers delivered were not intended as a recognition of an obligation; and the defendant has explained the circumstances under which he claims such payments were made.

"If you find for the plaintiff, then you will determine the amount due the plaintiff, and award the plaintiff the interest at the rate of 5 per cent. per annum from the 20th day of May, 1912. In case you cannot find from the evidence and by a preponderance of it that there was a contract made as claimed by the plaintiff, then your verdict will be that of no cause of action."

A verdict was rendered for plaintiff, and judgment entered thereon. Later a motion was made for a new trial. The judge overruled that motion, giving his reasons in writing for doing so. The case is brought here by writ of error.

Counsel for appellant say the questions involved are:

(1) Was the verdict of the jury supported by the weight of testimony?

(2) Should the motion of a new trial have been granted on the ground of newly discovered evidence?

(3) Did the court err in his charge to the jury relative to the special design of the silencers?

(4) Did the court err in submitting the question of an oral agreement as to price and design of silencers to the jury?

(5) Did the court err in refusing to admit evidence as to the terms of settlement between the Lackawanna Manufacturing Company and the defendant and in excluding the Defendant's Exhibit 6?

(6) Did the court err in refusing to consider the silencers offered as physical exhibit in connection with a motion for a new trial?

(7) Did the court err in refusing to strike out the Plaintiff's Exhibits 2, 3, 4, and 5?

(8) Should the defendant have been permitted to show that the Plaintiff's Exhibit J was a routine letter?

We approach these questions in the order in which they are presented in the brief:

1. It is argued that plaintiff's case depends wholly upon the testimony of Mr. Hall, and that the weight of testimony is against him. An examination of the record does not sustain this contention. It shows a sharp conflict in the testimony; witnesses flatly contradicting each other. There are letters and order sheets that standing by themselves tend to support the testimony of Mr. Hall. There is testimony on the part of defendant explaining these letters and the giving of the order sheets, which explanation, if accepted, would

do away with that tendency. There were two payments made by the defendant which tend to support the claim of the plaintiff. Explanations are made of the circumstances under which these payments were made, which explanations, if accepted, would remove that tendency. All this testimony is within the domain of fact, and presented a case for the jury. *Gardiner* v. *Courtright,* 165 Mich. 54 (130 N. W. 322), and the many cases cited therein. *Druck* v. *Lime Co.,* 177 Mich. 364 (143 N. W. 59), and the cases cited therein.

2. Should the motion for a new trial have been granted on the ground of newly discovered evidence? In overruling the motion the trial court said:

"The so-called newly discovered evidence is no more than cumulative upon one of the issues presented by defendant at the trial. Defendant's witness Bert Woodruff testified that he examined all the silencers sent out by defendant, and that none of them had a flange, and now to open the case for the purpose of letting others testify that the silencers Woodruff examined and others did not have flanges and to bring some of such silencers into court would only be adding some testimony to that already in the case."

A reference to the record shows that Mr. Woodruff was employed in the stockroom, and that he examined all of the silencers that came to the stockroom, and that:

"Those silencers were not provided with a flange at the inlet end.   *   *   *

"*Q.* Then the figure that you have marked here with the pencil is the figure that you identified as being the same as the silencer that you examined?

"*A.* The same as the silencer I was taking care of in the stock room.

"*Q.* Were there a large number of these silencers?

"*A.* The nearest I could remember was something near 10 or a dozen that were taken care of especially by me and examined. There may have been more, but not handled by me. All I remember is approximately 10 or 12 that I personally handled."

The amended declaration was filed in April, 1914. In referring to the contract which is the basis of this litigation, it is said:

"For that whereas heretofore, to wit, on the 11th day of March, 1911, at New York, in the State of New York, the plaintiff and defendant entered into a contract whereby the plaintiff agreed to manufacture and sell to plaintiff (defendant) a quantity of specially manufactured engine parts to wit, 275 Hydrex engine exhaust silencers, and the said defendant agreed to accept and pay for the same the sum of $955.35."

The case was tried in December, 1914, so that for eight months before the trial defendant knew it was claimed the silencers were of special manufacture. The motion for a new trial was filed within a month after the judgment was rendered. The so-called newly discovered evidence was to contradict the plaintiff when he testified the silencers were of special design and would be along the same line as the testimony of Mr. Woodruff, and is clearly cumulative. It is not explained why, if the same diligence had been used between the filing of the amended declaration and the trial that was used after the trial, the testimony might not have been produced upon the trial.

In *Canfield* v. *City of Jackson*, 112 Mich. 120 (70 N. W. 444), it was said:

" 'A motion for a new trial upon the ground of newly discovered evidence is not regarded with favor. The policy of the law is to require of parties care, diligence, and vigilance in securing and presenting evidence.' Elliott, App. Proc. § 857. To entitle one to a new trial upon this ground it should be shown: *First,* that the evidence, and not merely its materiality, be newly discovered; *second,* that the evidence be not cumulative merely; *third,* that it be such as to render a different result probable on a retrial of the cause; *fourth,* that the party could not with reasonable diligence have discovered and produced it at the trial. Hayne, New Trial & App. §§ 88-92, and many cases there cited; *Gray* v. *Barton,* 62 Mich. 186 [28 N. W. 813]."

We do not think there has been such an abuse of the discretion of the trial judge as to call for our intervention. See *Burke* v. *Traction & Electric Co.*, 147 Mich. 172 (110 N. W. 524) ; *Leonard* v. *Leahy*, 169 Mich. 406 (135 N. W. 335) ; *National Surety Co.* v. *Grant*, 177 Mich. 348 (143 N. W. 5).

3. Did the court err in his charge to the jury relative to the special design of the silencers? It is the claim of counsel for defendant that the court erred in that part of the charge which we have quoted by omitting any reference to the obligation of the plaintiff to minimize the loss. Counsel say it is not sufficient that goods should be "specially ordered," but it is also essential that the goods should have had no market value. We have been unable to find in the record any request proffered on the part of the defendant asking the judge to charge upon the subject of minimizing the loss.

In discussing the respective rights of the vendor and vendee the following has been stated:

"The vendor of present property in a suit against the vendee, for not taking and paying for the property, has a choice ordinarily of one of three remedies: (1) He may store or retain the property for the vendee and sue him for the entire price; (2) he may sell the property, acting as agent for this purpose of the vendee, and recover the difference between the contract price and the price of resale; or (3) he may keep the property as his own and recover the difference between the market price at the time and place of delivery and the contract price." Benjamin on Sales (7th Am. Ed.), p. 820.

In 1 Mechem on Sales, § 754, it is said:

"Under a contract for the manufacture of an article, as for the building of a ship or the construction of any other chattel, not existing in specie at the time of making the contract, it is the general rule that no title vests in the purchaser during the progress of the work, nor until the chattel is finished and delivered, or at least is ready for delivery, and, by tender or other

equivalent act is appropriated to the buyer. A few cases hold that the title will not pass until there has been, on the part of the buyer, either an acceptance of the chattel or some "acts or words respecting it from which an acceptance can be inferred." But, by the weight of authority, acceptance by the buyer is not indispensable. If the chattel is produced at the time, and of the kind and quality specified, and in all other respects in compliance with the order, so that the buyer ought to accept it, the title will pass upon a tender or offer of delivery, even though the buyer refuses to accept it."

See, also, *Whitcomb* v. *Whitney*, 24 Mich. 486; *Haynes* v. *Quay*, 134 Mich. 229 (95 N. W. 1082).

In *Black River Lumber Co.* v. *Warner*, 93 Mo. 374 (6 S. W. 210), the following language is used in the opinion:

"Where, however, the subject-matter of the contract is a specific article to be manufactured by the vendor for the vendee, and the vendor has completed his contract, and performed all that the contract requires him to do, it is but just and fair that his damages, in case of a refusal of the vendee to accept the article, should be the contract price. The vendor will, of course, in such case, hold the property for the vendee. And so it has been held in a number of cases. As some of them we cite *Shawhan* v. *Van Nest*, 25 Ohio St. 490 [18 Am. Rep. 313]; *Ballentine* v. *Robinson*, 46 Pa. 177; *Smith* v. *Wheeler*, 7 Or. 49 [33 Am. Rep. 698]."

See, also, *Goddard* v. *Binney*, 115 Mass. 450 (15 Am. Rep. 112), and other cases found in the brief of counsel.

5. Did the court err in his rulings about the settlement between defendant and the Lackawanna Manufacturing Company? It is true, as contended by counsel, that both companies had the same manager, and some of the same stockholders, though it is a matter of dispute when Mr. Hall severed his relations with the Lackawanna Manufacturing Company, but it is a fact that the corporations were separate entities. To

enter upon the terms of settlement between the defendant and a corporation not a party to the record would open a new field of inquiry. Could plaintiff dispute what was claimed by defendant as to the settlement? To ask the question is to suggest that a new issue would be presented which is not the subject of litigation herein. The pivotal question was, Between whom was the contract made?

We have discussed the important and determining questions, and will content ourselves with saying we have examined the other assignments of error, and think them not well taken.

Judgment is affirmed.

BROOKE, C. J., and PERSON, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.