Black River Lumber Co. v. Warner.

## BLACK RIVER LUMBER COMPANY v. WARNER, *Appellant.*

1. **Practice:** INSTRUCTIONS: WRITTEN CONTRACT. While it is the duty of the court to instruct the jury upon the issues made by the pleadings and evidence, it is also its province to construe written contracts.

2. **Parol Evidence** · CONTRACT PARTLY IN WRITING. [Parol evidence will not be received to contradict or vary a written agreement, but if a part only of the contract be reduced to writing, the matter left out may be supplied by parol evidence.

3. **Written Contract:** PAROL EVIDENCE. Where a contract is obscurely expressed, a knowledge of its subject-matter, and the relation of the parties become important, and parol evidence as to the same is admissible to aid in its interpretation.

4. ——: ——: AGENT. Where an agent makes a contract in his own name, parol evidence is competent to show that it was the intention of the parties that the agent alone should be bound by it.

5. **Question for Jury:** AGENCY. Whether, or not, the relation of agency existed between the parties to this cause was a question for the jury.

6. **Contract of Sale:** WAIVER. One who accepts and receives lumber, in part compliance with his contract of purchase, waives the objection that its quality does not meet the requirements of the contract.

7. ——: ——. So if the lumber is inspected, and accepted by an inspector, selected for the purpose, no fraud being shown.

8. **Contract of Sale** : FAILURE TO ACCEPT : MEASURE OF DAMAGES. In actions by the vendor against the vendee, for non-acceptance of personal property sold or contracted for, the measure of damages as a general rule, is the difference between the price agreed upon and the market value of the property at the time and place of delivery. The vendor may resell at such time and place, or within a reasonable time thereafter, and the price at the re-sale will be taken as determining the market value.

9. ———— : ———— : SPECIFIC ARTICLE TO BE MADE AND COMPLETED BY VENDOR. Where, however, the subject-matter of the contract of sale is a specific article, to be manufactured by the vendor for the vendee, and the vendor has completed his contract and performed all that the contract requires him to do, the measure of damages, in case of the refusal of the vendee to accept the article, will be the contract price. The vendor will, of course, in such case, hold the property for the vendee.

10. **This last rule applied** to a contract for purchase of lumber, which was to be cut in specified dimensions, and was designed for a particular use.

11. **Contract of Sale** : WAIVER OF TENDER. Where such lumber was to be inspected and accepted by the vendee at the mill, and was then to be shipped and delivered by the vendor at a different place, viz., St. Louis, the refusal of the vendee to inspect and receive the same at the mill dispensed with a tender in St. Louis.

12. ———— : LUMBER NOT MANUFACTURED : WHERE VENDEE REFUSES TO GO ON WITH CONTRACT : MEASURE OF DAMAGES. The measure of damages, in such case, as to lumber not manufactured, for refusal of the vendee to go on with his contract, would be the difference between the contract price and the cost of manufacturing the lumber, including cost of the timber and hauling the logs, loading the lumber on the cars, and freight to St. Louis.

13. ———— : ———— : RIGHT TO SUE FOR BREACH OF CONTRACT. The vendee having refused to go on with his contract, the vendor could maintain his action without having manufactured the lumber.

*Appeal from St. Louis City Circuit Court.*—Hon. SHEPARD BARCLAY, Judge.

REVERSED AND REMANDED.

*E. J. White* for appellant.

(1) [*a*] As to first count, the question of agency or purchase should have been submitted to the jury.

*Clarke v. Hammerle*, 27 Mo. 55; *Mead v. Brotherton*, 30 Mo. 201; *Sawyer v. Railroad*, 37 Mo. 240; *Paine v. Kohl*, 14 Neb. 580; *Moss v. Green*, 41 Mo. 390; *Philibert v. Burber*, 4 Mo. App. 470. (*b*) An instruction which assumes the existence of certain facts, as well as an instruction which assumes the existence of certain evidence to establish a certain fact, when no such evidence was introduced, is erroneous. *Ewing v. Goss*, 41 Mo. 492; *Chouteau v. 'Seavey*, 8 Mo. 733; *Gersen v. Railroad*, 60 Mo. 405; *Insurance Co. v. St. Mary's Seminary*, 52 Mo. 480; *Peck v. Richey*, 66 Mo. 114; . *Mascheck v. Railroad*, 3 Mo. App. 600; *Turner v. Railroad*, 51 Mo. 50; *Lester v. Railroad*, 60 Mo. 265; *Bank v. Armstrong*, 62 Mo. 59. (2) [*a*] As to the second count, defendants, if liable at all, were liable only for the difference between the contract price and the market value of the lumber of contract dimensions. *Whittman v. Coats*, 14 Mo. 9; *Northrup v. Cook et al.*, 39 Mo. 209; *Koeltz v. Bloeckman*, 46 Mo. 320; *Chapman v. Ingram*, 30 Wis. 290; *Rickey v. Tenbroek*, 63 Mo. 563; *Masterson v. Mayor*, 7 Hill, 62; *Rider v. Kelley*, 32 Vt. 268. (*b*) In the sale of property not *in esse*, the article must not only be made and offered to the vendee, but he must accept it, or it must be set apart for him, by his consent, before the title to it will rest in him. *Rider v. Kelley*, 32 Vt. 268; *England v. Mortland*, 3 Mo. App. 490; *Hale v. Huntley*, 21 Vt. 147; *Jones v. Marsh*, 22 Vt. 144; *Gilman v. Hill*, 36 N. H. 311; *Comfort v. Kirsted*, 32 Barb. 472; *Johnson v. Hunt*, 11 Wend. 137; *Mixer v. Howarth*, 21 Pick. 205; *Ober v. Carson*, 62 Mo. 209–213. (*c*) The court should have permitted the jury to determine as to whose duty it was, under the evidence, to have the lumber inspected. *Edwards v. Smith*, 63 Mo. 119; *Amonett v. Montague*, 63 Mo. 201; *Insurance Co. v. St. Mary's Seminary*, 52 Mo. 480; *Singleton v. Insurance Co.*, 66 Mo. 63; *Moss v. Green*, 41 Mo. 390; *Rollins v. Claybrook*, 22 Mo. 406;

*Philibert v. Burber*, 4 Mo. App. 470; *Blair v. Corby*, 37 Mo. 313; *Hueske v. Bruessard*, 55 Tex. 201; *Mason v. Ryns*, 26 Kas. 464; *St. Louis Gas Light Co. v. City of St. Louis*, 46 Mo. 121. (*d*) In refusing to permit the inspector sent to the mill to inspect the lumber, and in afterwards refusing to ship the lumber to St. Louis, when asked to do so, plaintiff was itself guilty of a breach of its contract, and became liable to defendants for their commissions on the whole bill. *Denny v. Kile*, 16 Mo. 455; *Howland v.;Leach*, 16 Pick. 155. (*e*) Where the acts of the vendor himself are inconsistent with a sale and delivery, he cannot claim that the property has been sold and delivered. *England v. Mortland*, 3 Mo. App. 490. (3) [*a*] As to third count, if defendants were liable, in any event, on the third count of plaintiff's petition, they were liable only for the difference between the contract price and the market value of the lumber upon the market in St. Louis, where it was to be delivered, at the time of delivery. *Masterson v. Mayor*, 7 Hill, 62; *Whitman v. Coats*, 14 Mo. 9; *Northrup v. Cook*, 39 Mo. 208; *McKing v. Dunlap*, 5 N. Y. 537; *Koeltz v. Bloeckman*, 46 Mo. 320; *Brown v. Nash*, 9 Barn. & Cress. 145; *Chapman v. Ingram*, 30 Wis. 290; *Shepherd v. Hampton*, 3 Wheat. 200; *Rickey v. Tenbroek*, 63 Mo. 563; *Day v. Dix*, 9 Wend. 129; *Allen v. Jarvis*, 20 Conn. 48; *Davis v. Shield*, 24 Wend. 322; *Rhodes v. Baird*, 16 Ohio St. 580, 581; *Clark v. Pinney*, 9 Cow. 681; 1 Sedg. on Dam. 554, and note *a*, p. 586. (*b*) A simple breach of the contract on the part of defendant would not authorize the plaintiff to stop work and recover for the unperformed work. Such a breach might justify him in abandoning the work, and entitle him to recover for the work already done, but for a mere breach of the contract on the part of his adversaries he cannot stop the work and recover for alleged profits on unperformed

work.   *Park v. Kitchen*, 1 Mo. App. 357 ; *Fitzgerald v.*
*Howard*, 50 Mo. 524.

   *T. K. Skinker* for respondent.

   (1)  The trial court did not err in refusing to leave it to
the jury to determine (*a*) whether defendants were plain-
tiff's agents to sell the lumber to the Clark Company ;
or (*b*) upon whom the duty of inspection devolved.   58
Mo. 290 ; 90 Mo. 639–640.   (2)  The plaintiff was properly
allowed to recover, on the second count, the full price, at
contract rates, of the lumber sawed according to the
contract but not delivered, less the cost of delivery.
Sedg. on Meas. of Dam. [5 Ed.] 333; 3 Pars. on Cont.
[5 Ed.] *208 ; 2 Benj. on Sales [Corbin's Ed. 1883] sec.
1125, note 5; Benj. on Sales [Bennett's Ed. 1881] sec.
763, note 6 ; *Graham v. Jackson*, 14 East, 498 ; *Dobbins
v. Edmonds*, 18 Mo. App. 307 ; *Ballentine v. Robinson*,
46 Pa. St. 177 ; *Shawhan v. Van Nest*, 25 Ohio St. 490 ;
*Smith v. Wheeler*, 7 Oregon, 49 ; *Bement v. Smith*, 15
Wend. 493 ; *Bagley v. Findlay*, 82 Ill. 524 ; *Bell v.
Offutt*, 10 Bush, 632, 639 ; *Cook v. Brandeis*, 3 Met.
(Ky.) 557.   (3)  The failure of the defendants to have the
sawed lumber inspected at the mill, and their absolute
refusal at last to take any more lumber at all, dispensed
with the necessity of making a tender at St. Louis, and
authorized immediate suit as if tender had been made.
*Westlake v. The City of St. Louis*, 77 Mo. 47–51 ;
*Deichmann v. Deichmann*, 49 Mo. 107; *Mastin v.
Grimes*, 87 Mo. 478; *Canda v. Wick*, 100 N. Y. 127 ;
*Ripley v. McLure*, 18 L. J. Ex. 419 ; *Goodwin v. Hol-
brook*, 4 Wend. 377 ; *Pearson v. Mason*, 120 Mass. 53 ;
*Hayden v. Demets*, 2 Jones & Sp. 344 ; *Pittsburgh
Bessemer S. R. Co. v. Hinckley*, 17 Fed. Rep. 584; 121
U. S. 264.   (4)  The fact that there is among the sawed
lumber some which does not comply with the contract
(called culls) does not invalidate plaintiff's offer to

deliver, or affect his right of recovery. (*a*) Because defendants' refusal to receive was not put on this ground. *Wheelan v. Reilly*, 61 Mo. 568 ; *Adams v. Helm*, 55 Mo. 471 ; *Stokes v. Recknagel*, 6 Jones & Sp. 368 ; *Graham v. Jackson*, 14 East, 498 ; *Hayden v. Demets*, 53 N. Y. 426. (*b*) Because under the contract, as interpreted by the acts of the parties, plaintiff was not bound to remove the culls before demanding inspection. *Jones v. Delassus*, 84 Mo. 541–545 ; *Patterson v. Camden*, 25 Mo. 13 ; *Crawford v. Earl*, 38 Wis. 312 ; *Hunter v. Wetsell*, 84 N. Y. 554–555. (*c*) Because the quantity is inconsiderable. *Tenny v. Mulvaney*, 8 Oregon 135 ; *Cullen v. Bimm*, 37 Ohio St. 236 ; *Sands v. Taylor*, 5 Johns. 395–398. (5) The plaintiff was properly allowed to recover, on the third count, for defendants' refusal to permit it to complete the contract, the profits which it would have made had it been permitted to saw and deliver the remainder of the lumber. Benj. on Sales [Bennett's Ed.] sec. 760 ; *Eckenrode v. Chemical Co.*, 55 Md. 51 ; *Hale v. Frout*, 35 Cal. 229 ; *Pittsburgh Bessemer Steel Rail Co. v. Hinckley*, 17 Fed. Rep. 584 ; 121 U. S. 264 ; *Atkinson v. Morse*, 5 West. Rep. 917 ; *Salvo v. Duncan*, 49 Wis. 151. (6) After positive refusal of defendants to take any more lumber, plaintiff had no right to proceed with the contract ; he was bound to stop work and look to the defendants for damages. *Clark v. Marsiglia*, 1 Denio, 317. Their refusal is, in the eye of the law, a prevention by them of the further execution of the contract. *Cort v. Railroad*, 17 Ad. & Ell. [N. S.] 127–143 ; *Black v. Woodrow*, 39 Md. 194–216 ; *Textor v. Hutchings*, 65 Md. 150 ; *Derby v. Johnson*, 21 Vt. 17 ; *Railroad v. VanDusen*, 29 Mich. 431–444. (7) The plaintiff was properly allowed to recover on the first count for the small quantity of lumber, not of contract sizes, which was received and used by defendants. *Woods v. Stephens*, 46 Mo. 555 ; *Helm v. Wilson*, 4 Mo. 44 ; *Crawford v.*

*Elliott*, 78 Mo. 497 ; *Pacific Mail S. S. Co. v. United States*, 18 Court of Claims, 30.

BLACK, J.—This suit is founded upon an alleged contract between the plaintiff, a corporation engaged in manufacturing lumber, and the defendants, Warner and Pearman, whereby it is alleged the plaintiff was to manufacture and· deliver to the defendants between four and five hundred thousand feet of lumber. The suit is in three counts. The first seeks to recover a balance due on lumber delivered ; the second declares for the contract price of another portion, which was sawed but not received by the defendants ; and the third seeks to recover, by way of damages, the· profits which would have accrued to the plaintiff, but for the refusal of the defendants to go on with the contract. The defendants answer, among other things, that they did not purchase the lumber ; that they were but commission merchants, and as such sold the lumber for plaintiffs, and as their agents, for an agreed compensation, to the E. C. Clark Lumber and Iron Company, which company purchased the same for the Union Pacific Railroad Company. There was a verdict for the plaintiff on each of the three counts, and the defendant, Warner, appealed.

The complaints are, that the court erred in refusing to submit the question of agency to the jury, and in the instructions given upon the measure of damages. Mr. Daniels was the managing officer of the plaintiff, at its office in St. Louis, and Mr. Badgley had control of its affairs at the mill, which was in Butler county, some two hundred miles from St. Louis ; and the defendants were lumber commission merchants in St. Louis. Daniels testified that, in December, 1881, he saw the defendants and wanted to sell them lumber to be thereafter sawed ; that he told them his company had no agents and sold for cash only ; that he made prices with de-

fendants for a bill of lumber, as he thought, but Pearman went to Badgley and made a different contract. The defendants, in substance, testified that Daniels called upon them to solicit orders; that they told him of a contract which the Clark Company had to furnish a large amount of lumber for the Union Pacific Railroad Company; and that they could get him a part of that order; that Daniels wanted to sell directly to them and at prices something less than the Clark Company was paying; that they refused to buy, because they were doing a commission business only; and that Daniels said: see Badgley and whatever he said would be all right. Pearman says he then got a list of lumber from the Clark Company, went to the mill, and Badgley made a memorandum of such lumber as he wanted to cut at the prices; that he told Badgley who the lumber was for, and that it would be inspected by the agent of the Union Pacific Railroad Company. Badgley states that Pearman presented him a list of some eight hundred thousand feet, and wanted to know how much he could cut; that he made a note of what he would take, and agreed upon prices; that Pearman was to go home and send him a letter which would form the contract; and that he traded directly with Pearman.

Pearman then went to another mill in Arkansas, and made arrangements for another portion of the lumber, a list of which he had exhibited to Badgley. When Pearman returned to St. Louis, the following correspondence ensued:

"St Louis, January 3, 1882.

"Black River Lumber Co.,

"Neeleyville, Butler county, Mo.

"Gentlemen:—Please saw for us the following bill of white or burr oak, twenty-three dollars per thousand feet, F. O. B. cars here, commissions, etc., off, to be in-

spected at the mill, in lots not less than fifty thousand feet, and to be of sound timber, free from loose or rotten knots, to be suitable for car construction purposes.

"Very respectfully,

"WARNER & PEARMAN."

On the fifth of January, 1882, defendants wrote Badgley another letter, stating that the prices of the lumber in their former letter should have been "twenty-nine dollars for sills, and all oak twenty feet and under, twenty-three dollars." A detailed bill, showing the sizes and dimensions of the lumber, was attached to the letter of the third. On the fifth of January, Badgley answered the letter of the third as follows :

"Yours of the third inst. at hand ; contents noted. You are in error about prices of oak lumber. We quoted for two hundred thousand feet of shorts, as per your bill, at twenty-three dollars, and for two hundred thousand feet of long, as per your bill, at twenty-nine dollars, commission at five per cent. off, F. O. B. in St. Louis, and not for the whole amount at twenty-three dollars as stated in yours. Please correct error, and we will accept the bill."

It was upon this correspondence that plaintiff commenced sawing the lumber. It would seem that something had been said with respect to payments, not embraced in the above correspondence ; and the plaintiff being in need of money, Daniels saw the defendants on the fourteenth of March, 1882, who then wrote Badgley a letter, in which they said : "We handle business on commission, which is five per cent. of amount of lumber billed, twenty-three dollars per thousand feet, and we agree to pay seventy-five per cent. of the amount in advance, less regular freight in St. Louis." In December, 1881, and January, 1882, the defendants took a large number of orders from the Clark Company for lumber, amounting in all, to some three million feet. They made arrangements with mill men to supply the lumber to fill

these orders. The arrangement with the Clark Company was, that the lumber should be inspected by the Union Pacific Railroad Company, and that the Clark Company should have ninety days' credit, two per cent. off for cash. The prices are the same as those allowed the plaintiff; and the evidence is, that defendants received no compensation from the Clark Company, but settled on the same prices as allowed to plaintiff.

The evidence shows that the plaintiff, in March and April, 1882, sawed and shipped to the defendants thirteen carloads, the first two were shipped directly to the defendants at St. Louis, the others, by their direction, to Omaha. The lumber thus shipped was all inspected at the mill by Nash, who represented the Union Pacific Railroad Company. The inspections were made by order of the Clark Company, and reported to defendants. In May, 1882, the plaintiff had sawed some sixty thousand feet, and Nash went to the mill to inspect the same. It appears Nash was instructed by the railroad company not to inspect certain sizes included in the plaintiff's bill. Badgley declined to allow the inspection, because the sizes which Nash proposed to take would be but a part of the lumber then sawed. There is evidence tending to show that this difficulty arose from the fact that these sizes had been filled by other mills.

Besides the lumber shipped and sawed, but not accepted, there were of the plaintiff's bill some two hundred and eighty-nine thousand feet still to be sawed, and for which plaintiff had a portion of the logs in the mill-yard. On the seventh of April, defendants wrote Badgley, saying that they had been notified by the railroad company that, for want of space in their yards, no more oak would be received for the present, and to govern himself accordingly. Badgley stopped sawing for the time, but in June, he and Daniels saw defendants and offered to go on with the contract; they say defendants refused to have the lumber then sawed inspected, and

refused to take any more on the contract. There is some evidence that the difficulty between the parties was settled.

1.   The instructions given by the court proceed upon the theory that the letters of January made a direct contract between the parties to this suit; and the first question is, whether the court should have also instructed upon the question as to whether defendants, in the matter in question, were simply acting as the agents of the plaintiff; this the court refused to do. There is no doubt but it is the duty of the court to instruct upon the issues made by the pleadings and evidence. It is equally true that it is the province of the court to construe written contracts. While parol evidence will not be received to contradict or vary a written agreement, still, if a part only of the contract be put in writing, the matter left out may be supplied by parol evidence. So where the contract is obscurely expressed, a knowledge of the subject-matter of the contract, and the relation of the parties became important. The contract may be understood in the light of the circumstances under which it was made. *Edwards v. Smith*, 63 Mo. 119 ; *Bunce v. Beck*, 43 Mo. 266 ; *Moss v. Green*, 41 Mo. 390. So if an agent makes a contract in his own name, parol evidence is admissible to show that it was the intention of the parties that the agent alone should be bound by it.   *Ferris v. Thaw*, 72 Mo. 446.   The court in this case received, and properly, too, much evidence designed to show the relation existing between the plaintiff and the defendants.   Some foundation is laid in the letters themselves for saying that defendants were but the agents of the plaintiff. The letter of March 14, 1882, it is true, was written after the arrangement had been completed, whatever it may have been, but it relates to a subject, namely, payments, not mentioned in the former correspondence.

No objection was made to the letter when received

by the plaintiff, and it would lead to the conclusion that the payments, before spoken of, were those to be made by the Clark Company, and hence strengthen the assertion that defendants were but commission-men. Again, the letter of January 30, speaks of prices which are stated, "commissions, etc., off;" and the answer of the plaintiff corrects the statement as to prices and then says, "commissions at five per cent. off." These expressions, even taking the letters by themselves, tend to show that defendants were acting in a representative capacity. When considered in the light of the fact that the prices paid by the Clark Company were the same as mentioned in these letters, together with the fact that defendants were by occupation commission men, it might well be concluded that they were, as they say, but brokers in the entire transaction. There is other evidence to the same effect, and we think the question of agency should have been submitted to the jury.

When we turn to the transaction, as between the defendants and the Clark Company, there is evidence tending to show that they, in this case, made a contract directly with that company to furnish some eight hundred thousand feet of lumber; and then made their personal contracts with the plaintiff and another mill to supply them with lumber to fill their contract with the Clark Company. If this was the true nature and character of the transactions, then defendants should be held as parties to the contract. These transactions appear to have been conducted with a degree of looseness on all hands, and after a patient examination of the record we conclude the question of agency is one of fact, and should be left to the jury to determine. Because this was not done the judgment will be reversed. As the cause must be retried, we pass to the consideration of the other questions, assuming that the letters of January

3, and 5, were designed to be, and do, constitute a contract between the plaintiff and the defendants.

2.   So far as the first count of the petition is concerned, there is no difficulty on the facts stated in the instruction given.   Some of the lumber inspected at the mill and shipped to the defendants, it now appears, did not come up to the contract.   It was all of the same general quality, and it seems Nash reported his inspection by pieces to the defendants.   If the defendants accepted and received the lumber as in part compliance with the contract, they are liable for the contract price. *Crawford v. Elliott*, 78 Mo. 497 ; *Stephens v. McKay*, 40 Mo. 224.   It would seem that the inspection and acceptance of the lumber by Nash should settle all such questions, no fraud being alleged or shown.   But the instructions do not present the question in that light.

3.   As to the measure of damages on the second count, for the lumber sawed, but which the defendants refused to have inspected at the mill, and refused to accept, there is a want of uniformity in the rulings of different courts.   As a general rule, in actions by the vendor against the vendee, for the non-acceptance of property sold or contracted for, the measure of damages is the difference between the price agreed upon and the market value of the property at the time and place of the delivery.   The vendor may re-sell at that time and place, or within a reasonable time, and the price at the re-sale will be taken as determining the market value. *Rickey v. Tenbroeck*, 63 Mo. 564 ; *Northrup v. Cook*, 39 Mo. 208.   Some cases hold that there can be no recovery of the contract price of articles to be manufactured or produced until the vendee has accepted the property, and this on the ground, it is said, that the title will not vest in the vendee against his will, and that the title must vest in him before he can be made liable for the contract price.   Of this class is the case of *Rider v. Kelly*, 32 Vt. 271.   On the other hand, many authorities and text-

books assert quite broadly the proposition that the vendor, having tendered the goods and done all that the contract required him to do, may treat them as the property of the vendee, hold them for him, and subject to his order, and recover the contract price. 3 Pars. Cont. [5 Ed.] 209 ; Field on Dam., sec. 299 ; Sedg. on Dam. [6 Ed.] 337.

This rule, in its broad sense, has not met the approval of some courts, nor are we prepared to say it should be applied in cases of sales of ordinary goods, wares, and merchandise. This case does not call for the expression of an opinion upon that question. Where, however, the subject-matter of the contract is a specific article to be manufactured by the vendor for the vendee, and the vendor has completed his contract, and performed all that the contract requires him to do, it is but just and fair that his damages, in case of a refusal of the vendee to accept the article, should be the contract price. The vendor will, of course, in such case, hold the property for the vendee. And so it has been held in a number of cases. As some of them we cite, *Shawhan v. Van Nest*, 25 Ohio St. 490 ; *Ballentine v. Robinson*, 46 Pa. St. 177 ; *Smith v. Wheeler*, 7 Oregon, 49. In the first of these cases, the article manufactured was a carriage, in the others machinery. In the class of cases supposed, there is often no market value for the manufactured article. The rule will be less disastrous to the purchaser than a sale in an open market. Here, the lumber to be manufactured was of specified sizes, and designed for a particular use. It was necessary to cut the logs for the particular bill, and they were to be of specified timber only. It is shown that the standing timber was of no greater value than twenty-five cents per thousand feet, so that the value of the manufactured lumber consisted almost wholly of work and skill.

To say that one may go to a distant mill, order a special bill of lumber, make breach of the contract, and

then say to the mill-man, "you must measure your damages by the market price of such lumber two hundred miles from the mill," is manifestly unjust, and the law does not require us to so hold. And this we say, though the lumber was to be delivered in St. Louis, and though the defendants offered to show that there was a market value to such lumber in that place. It is to be remembered that the lumber was to be inspected at the mill, and that implies an acceptance there so far as quality is concerned. The rule of damages, before stated, as applicable to articles to be thereafter manufactured, namely, the contract price, should be applied in this case. It is true the lumber was not tendered in St. Louis; but it was to be inspected at the mill before shipped. The plaintiff was not called upon to incur the cost of transportation until inspected, until the question as to the quality was settled. If the defendants refused to have the lumber inspected and refused to accept, receive, and pay for the same, then plaintiff was not in default. An absolute refusal to have the lumber inspected, and to receive the same, dispensed with the tender at St. Louis. A tender, under such circumstances, would have been a costly, as well as an idle, ceremony, which the law does not require. *Johnson v. Powell*, 9 Ind. 556; *Diechman v. Diechman*, 49 Mo. 107; *Westlake v. St. Louis*, 77 Mo. 49; *Canda v. Wick*, 100 N. Y. 127. Of course, cost of loading on the cars and transportation to St. Louis should be included as a part of the cost of production to be deducted from the contract price.

4. It quite nearly follows, as a corollary from what has been said, that, as to the lumber not sawed because of the defendants' refusal to go on with the contract, that the measure of damages will be the difference between the contract price and the cost of manufacturing the lumber, including the cost of the timber and hauling the logs, loading the lumber on the cars, and freight

thereon to St. Louis. In the quite recent case of *Hinckley v. Pittsburg Steel Co.*, 121 U. S. 272, the plaintiff in the circuit court, the steel company, made a contract with the defendant, whereby the plaintiff was to manufacture six thousand tons of steel rails at a specified price. The defendant delayed in giving instructions for drilling, though requested so to do, and finally notified the plaintiff that he would not perform the contract. The plaintiff, because of the delay produced by the defendant, postponed the rolling of the rails and never rolled any to be delivered on the contract, but sued the defendant for breach thereof. The court held that the defendant was liable for the breach of the contract; that plaintiff was not bound to roll and tender the rails to the defendant, in order to maintain an action for breach of the contract; and that the measure of the damages was the difference between the cost of making and delivering the rails and the contract price. Among other things it is said: "By reason of the facts found as to the conduct and action of the defendant, the plaintiff was excused from actually manufacturing the rails, and the rule of damages, applicable to a case of the refusal of a purchaser to take an existing article, is not applicable to a case like the present. The proposition, that, after the defendant had, for his own purposes, induced the plaintiff to delay the execution of the contract until after the thirty-first of August, 1882, and had thereafter refused to take any rails under the contract, the plaintiff should still have gone on and made the six thousand tons of rails and then sold them in the market for the defendant's account, in order to determine the amount of recovery against the defendant, can find no countenance in a court of justice." Reference is then made to the case of *Railroad v. Howard*, 13 How. [U. S.] 307, which was a suit by a contractor for building a railroad, and in which it is said: "And in case of a contract like this, that loss is, among other things, the difference between the cost of

the doing the work and the price to be paid for it. This difference is the inducement and real consideration which causes the contractor to enter into the contract."

The contention in the present case is, that the measure of damages can never be the difference between the cost of production and the contract price, where the article manufactured has a market value. It is believed, we may say, without proof, that steel rails have quite as much a market value as oak lumber manufactured so as to be suitable for car-construction purposes, and that is this case. A thing may have a market value and yet not so general and certain a value as to be a true guide in all cases. The object of the law is to place the party in the same condition that he would have been, if the contract had been performed, and in cases like the present the rule before indicated is quite as certain in its application as any that can be devised. Without stating and quoting from other cases, which we think support the conclusion here reached, we cite some of them: *Hale v. Trout*, 35 Cal. 229 ; *Railroad v. Shirley*, 45 Texas, 355 ; *Eckenrode v. Chemical Company*, 55 Md. 51 ; *Masterton v. Mayor*, 42 Am. Dec. 38, and notes.

For the reasons before stated the judgment is reversed, and the cause remanded. All concur.