STIX, BAER & FULLER DRY GOODS COMPANY v. OTTAWA REALTY COMPANY et al.; CHICAGO BONDING & SURETY COMPANY, Appellant.

Division Two, February 16, 1918.

1. **ACTION ON BOND: Construed in Light of Contract.** If the bond sued on refers to the contract and the contract refers to the bond, the bond is to be construed in the light of the terms of the contract; and being so construed, the liability of the surety on the bond cannot exceed that of the principal therein.

2. ————: ————: **Measure of Vendor's Damages: No Delivery or Tender.** If the vendee, having agreed to pay one-half of the purchase price of goods in advance, makes default, the measure of damages of the vendor, who by the contract has the right to refuse to make delivery and refuses to make delivery or tender the goods, is not the full amount of the advance payment agreed to be made, but (upon proper pleadings) the profit, if any, which he lost by the vendee's breach.

3. ————: ————: ————: **Nominal: Unconditional Promise.** Where the principal by his contract for the purchase of carpets agreed, as a condition precedent to delivery, to pay one-half the purchase price in advance of the designated date of delivery, and the surety by its guaranty bond, in which said provision of the contract was incorporated, obligated itself to pay the said designated sum in case the principal did not pay it by said date, and the vendor ex-

ercised its option, reserved in the contract, not to deliver unless said advance payment was made, the said vendor, in its action on the bond, is not entitled to recover said designated sum; and if it bases its petition on the theory that the guaranty bond is an unconditional and independent promise to pay a sum certain upon a day certain—thus disassociating itself wholly from the contract of sale, to which the bond itself refers as the sole actual consideration for its existence, and neither averring nor proving a delivery or an attempt or offer to deliver or any expense or loss sustained by reason of failure to pay—it can recover only nominal damages. There being neither delivery, nor offer to deliver, nor averment or proof of loss, the vendor cannot both retain the goods and recover in money the amount of their value; and the liability of the surety, in such case, is the same as that of the vendee.

4. ———: ———: ———: ———: Profits: Pleading. It may be that the vendor, upon proper pleadings and proof, in its action for a breach of the bond guaranteeing an advance payment for carpets sold, may be entitled to recover the profits which he lost by the vendee's breach of the contract, which would seem to be the difference between the price agreed to be paid and the cost of buying them upon the market, making them up and laying them down in the rooms for which they were intended; but he is not entitled to recover profits, nor anything more than nominal damages, where he neither avers nor proves that he has done anything whatever towards fulfilling the contract on his part except to bring his suit for the amount of advance payment.

Appeal from St. Louis City Circuit Court.—*Hon. Wilson A. Taylor,* Judge.

REVERSED AND REMANDED.

*Holland, Rutledge & Lashly* for appellant.

(1) The court erred in giving the peremptory instruction to find for respondent and to assess its damages in the sum of $12,000 and interest. (a) Because the liability of a surety can never exceed that of his principal. (b) Where a bond refers to another contract, such contract becomes a part of the bond and the latter must be construed in the light of the provisions of such contract. Heller v. Daman, 183 Mo. App. 334; Machine Co. v. Winchell, 107 Ind. 260; Jordan v. Cavanaugh, 63 Iowa, 152; Forest v. Leonard, 112 Ala. 298; Stevens v. Partridge, 109 Ill. App. 486; Trust Co. v.

Surety Co., 175 Fed. 200. (c) Where a contract of sale is executory and the vendee fails to perform, the vendor cannot recover the purchase price, but can recover by way of damages only the difference between the contract price and the market price. Lumber Co. v. Warner, 93 Mo. 374; Brown v. Asphalt Co., 210 Mo. 620; Kingsland & Ferguson Co. v. Iron Co., 29 Mo. App. 526; Frederick v. Willoughby, 136 Mo. App. 244; 35 Cyc. 592; Benjamin on Sales (5 Ed.), p. 805; 2 Sedgwick on Damages (9 Ed.), par. 573; Thornberry v. Thompson, 69 Mo. 481; Barrie v. Seidel, 30 Mo. App. 559. (d) If the bond in question is to be treated as independent of the contract of sale, then it is void for want of consideration. Smith v. Busby, 15 Mo. 391. (e) A stipulation in a contract for liquidated damages is unenforceable where the actual damages are readily ascertainable and the stipulated amount savors of extortion and injustice. Bayse v. Ambrose, 29 Mo. 39; Railway v. Stone Co., 90 Mo. App. 171; Cochran v. Railway, 113 Mo. 359; Menges v. Piano Co., 96 Mo. App. 283; (f) Because the petition does not state a cause of action. (2) The court erred in refusing to give the peremptory instruction asked by appellant at the close of all the evidence. Thornberry v. Thompson, 69 Mo. 481; also cases supra. (3) The court erred in refusing to give instruction asked by appellant to the effect that if they found for respondent only nominal damages could be allowed. Authorities supra.

*Eliot, Chaplin, Blayney & Bedal* for respondent.

(1) Even assuming that respondent was suing on the contract and not on the bond, the payment of $12,000 was a condition precedent to any delivery of carpets, etc. Under such a contract it was not even incumbent upon respondent to make a tender of the carpets, etc., much less show any delivery. The trial court correctly excluded the offer of proof made by appellant. Benjamin on Sales (7 Ed. Bennett's), sec. 762, p. 789; Williston on Sales, secs. 560, 575; 5 Elliott on Contracts, sec. 5093, p. 1229; Burdick on Sales (2 Ed.), sec. 365, p. 221;

2 Mechem on Sales, sec. 1415, p. 1225; Dunlop v. Grote, 2 Car. & Kirwan, 153; Gourd v. Healy, 163 N. Y. Supp. 637; Hop Co. v. Livesly, 51 Ore. 527; Lumber & Mfg. Co. v. Reyburn, 195 S. W. 576; Loveland v. Drug Co., 116 N. E. (Mass.) 570; White v. Solomon, 164 Mass. 516; Loud v. Land & Water Co., 153 U. S. 564; Kirtz v. Peck, 113 N. Y. 222. (2) Appellant incorrectly states the rule in this State on the right of a seller under an executory contract to sue for the purchase price of goods where the payment of the price and delivery of the goods are concurrent conditions. But such rule has no application to this case where the payment of part of the purchase price was a condition precedent to the delivery of the goods. The correct rule where the conditions are concurrent is given in the following cases: Lumber Co. v. Warner, 93 Mo. 374; Oehler v. Fruit Co., 162 Mo. App. 446; Potato Growers' Assn. v. Produce Co., 185 Mo. App. 1; Range Co. v. Mercantile Co., 120 Mo. App. 438; Klein v. Johnson, 191 Mo. App. 453; Dehner v. Miller, 166 Mo. App. 504; Koenig v. Boat Mfg. Co., 155 Mo. App. 685; Walker v. Nixon, 65 Mo. App. 326; Campbell v. Woods, 122 Mo. App. 719; Vinegar & Spice Co. v. Wehrs, 59 Mo. App. 493. In Missouri, the rule is not limited to articles specially manufactured for the buyer, but is applied as well to articles of ordinary commerce. If the point were applicable to this case, the stricter rule applied in other states would apply, because the contract of sale was for more than carpets, linoleum and paper. The carpets were to be made up by the seller specifically for use in the Southern Hotel and were to be laid by the seller in the rooms in that hotel. (3) The case of Thornberry v. Thompson is very different from the case at bar, and in its final result fully sustains the position of respondent. Thornberry v. Thompson, 69 Mo. 481, 18 Mo. App. 421. (4) The bond sued on was not a contract of indemnity but was a convenant to do an affirmative act—pay $8000 on April 1st and $4000 on April 15th. Respondent's right of action immediately accrued on failure of the principal to make the payments, and no damages need be proved

by respondent. Investment Co. v. Lewis, 196 S. W. 1137; Investment Co. v. Lewis, 180 Mo. App. 22; Loewenthal v. McElroy, 181 Mo. App. 399; Burnside v. Wand, 170 Mo. 531; Bank v. Leyser, 116 Mo. 51; Rowsey v. Lynch, 61 Mo. 560; Ham v. Hill, 29 Mo. 275; Hicks v. Hoos, 44 Mo. App. 571; Ins. Co. v. Brown, 80 Mo. App. 459; 2 Joyce on Damages, sec. 1358; 13 Cyc. 166. (5) The appellant is a surety for hire and therefore not a favorite of the law. Its contract is not to be construed *strictissimi juris*. Lackland v. Renshaw, 256 Mo. 133; State to use v. Cochrane, 264 Mo. 581; R. E. & Finan. Co. v. Trust Co., 184 S. W. 1030. A strained construction should not be adopted either to hold or release a surety. Beers v. Wolf, 116 Mo. 179, 184; Gouns v. F. & G. Co., 192 S. W. 112. Only so much of the contract is incorporated in the bond as is referred to, viz, that part of the contract stipulating for the two payments. 5 Cyc. 757; 9 Corpus Juris, 36; Blythe v. Free, 148 Pac. 427.

FARIS, J.—This is an action brought by plaintiff against defendants upon a bond of guaranty, wherein upon trial *nisi* plaintiff had judgment upon a directed verdict for the full penal sum of the bond. On the trial defendant Ottawa Realty Company made default. Defendant Chicago Bonding & Surety Company, after the conventional motions, appealed.

The facts of the case, except such as we shall find it necessary briefly to refer to in our discussion of the case, clearly and sufficiently appear from the petition, from the bond and contract filed as exhibits thereto, and from the answer filed by defendant Chicago Bonding & Surety Company. Defendant Ottawa Realty Company filed as its answer a general denial merely, and thereafter, as stated, made default.

The petition of plaintiff herein, caption, signatures, and merely formal parts omitted, is as follows:

"Now comes the plaintiff in the above entitled cause, and states that it and the defendant Ottawa Realty Company are Missouri corporations, and the

defendant Chicago Bonding & Surety Company is an Illinois corporation.

"And for cause of action, plaintiff states that on, to-wit, the 18th day of March, 1914, the defendant Ottawa Realty Company as principal, and the defendant Chicago Bonding & Surety Company as surety, executed a bond to plaintiff in the sum of twelve thousand dollars, with interest at the rate of six per cent per annum on the sum of eight thousand dollars after the first day of April, 1914, and on the sum of four thousand dollars after the fifteenth day of April, 1914, conditioned that if the principal should pay the sum of eight thousand dollars on or before the first day of April, 1914, and the sum of four thousand dollars on or before the fifteenth day of April, 1914, and if not paid at said times to bear interest at the rate of six per cent per annum, and when said principal and interest were paid then the obligation to be void, otherwise to remain in full force and effect.

"Plaintiff herewith files a copy of the said bond, verified by affidavit, as required by section 1844, Revised Statutes 1909, and makes the same a part of its petition the same as if hereunto attached.

"And for breach of said bond, plaintiff states that the defendant Ottawa Realty Company failed to pay the sum of eight thousand dollars on or before the first day of April, 1914, and the sum of four thousand dollars on or before the fifteenth day of April, 1914, and the defendant Chicago Bonding & Surety Company has also failed to pay the said sums, and that the said sum of twelve thousand dollars still remains due and unpaid.

"Wherefore, plaintiff prays judgment against the defendants, Ottawa Realty Company and Chicago Bonding & Surety Company, in the sum of twelve thousand dollars, together with interest at the rate of six per cent per annum on eight thousand dollars from April 1, 1914, and on four thousand dollars from April 15, 1914, together with its costs."

As stated above, the bond of guaranty was made a part of plaintiff's petition by reference, and by being attached thereto as an exhibit. This bond in turn referred to the contract, which was, as to certain provisions thereof, guaranteed by the bond. The contract in turn referred to the bond. Upon the trial both the bond and the contract were offered by plaintiff as a part of its case. This bond, omitting signatures, corporate seals, and merely formal parts, reads thus:

"Know all men by these presents, That we the Ottawa Realty Company, a corporation organized under the laws of the State of Missouri, as principal, and the Chicago Bonding & Surety Company, a corporation organized under the laws of the State of Illinois, with principal office at 29 South LaSalle Street, Chicago, Illinois, and St. Louis office at 350 Pierce Building, St. Louis, Missouri, as surety, are held and firmly bound unto Stix, Baer & Fuller Dry Goods Company, a corporation organized under the laws of the State of Missouri, as obligee, in the full and just sum of twelve thousand dollars, with interest at the rate of six per cent per annum on the sum of eight thousand dollars after the first day of April, 1914, and on the sum of four thousand dollars after the fifteenth day of April, 1914, as set out below, to the payment of which sum, well and truly to be made in lawful money of the United States, the principal and surety bind themselves, their successors and assigns, jointly and severally, firmly by these presents.

"Signed, sealed and delivered, this 18th day of March, 1914.

"The condition of the above obligation is such, that,

"Whereas, the Ottawa Realty Company has this day entered into an agreement with the Stix, Baer & Fuller Dry Goods Company for the purchase of carpets and linoleum, a copy of which agreement is hereto attached and referred to; and,

"Whereas, it is provided in said agreement, among other things, as follows:

"The Ottawa Company will pay the Dry Goods Company on the first day of April, 1914, the sum of eight thousand dollars, which, at the option of the Dry Goods Company, shall be a condition precedent to any delivery of carpets, and is to be a part payment of the purchase price of said carpets in advance of their delivery and being laid, and the Ottawa Company further will pay the Dry Goods Company on the fifteenth day of April, 1914, the sum of four thousand dollars, and the Ottawa Company is to furnish to the Dry Goods Company its own collateral bond or guaranty, with a Surety Company satisfactory to the Dry Goods Company bound thereupon, to the prompt payment of the said sum of eight thousand dollars on the first day of April, 1914, and the said sum of four thousand dollars on the fifteenth day of April, 1914, with interest thereupon at the rate of six per cent from the said respective dates until paid.

"And,

"Whereas, This is intended to be the bond or guaranty referred to in the said contract, and is made for that purpose and in consideration of the making of said contract.

"Now, Therefore, if the principal shall pay the sum of eight thousand dollars on or before the first day of April, 1914, and the sum of four thousand dollars on or before the fifteenth day of April, 1914, and if not paid at said times to bear interest at the rate of six per cent per annum, and when such principal and interest are paid, then this obligation to be void; otherwise to remain in full force and effect.

"In witness whereof, the principal has caused this bond to be signed by its president, attested by its secretary, with its seal affixed, and the surety has caused this bond to be signed by its attorney-in-fact, with its seal affixed, in the city of St. Louis, the day and year first above written."

The contract mentioned above, and referred to in the bond sued on, formal parts, and signatures and corporate seals, all of which are conventional, being omitted, reads thus:,

"This agreement, Made and entered into this 18th day of March, 1914, and between the Ottawa Realty Company, a corporation duly organized under the laws of the State of Missouri (hereinafter called

'the Ottawa Company'), and the Stix, Baer & Fuller Dry Goods Company, a corporation duly organized under the laws of the State of Missouri (hereinafter called 'the Dry Goods Company'),

"Witnesseth:

"The Ottawa Company agrees with the Dry Goods Company that it will purchase and accept from the Dry Goods Company the carpets required for the furnishing of the newly-equipped Southern Hotel, together with the linoleum for the bathrooms thereof, of which property the Ottawa Company is the lessee, the quantity of which carpets is to be approximately twenty thousand yards of the character and kind known in the carpet trade as 'Smith's No. 7000,' at one dollar and twenty-five cents per yard, 'Smith's No. 4000' at ninety-two cents per yard, and 'Hartford-Plaza' at one dollar and twenty-five cents per yard, of standard patterns, at and for the prices stated according to the quantities used, amounting in all to approximately twenty-four thousand dollars: the linoleum is to be approximately four hundred yards, of the character and kind known as 'Blue and White Tile, Best Quality, Domestic Inlaid Linoleum,' at one dollar and fifteen cents per yard, and B. grade Brown German Linoleum at seventy-five cents per yard. The paper to be laid under the carpets is additional in price, at the rate of nine dollars and fifty cents per bale of two hundred yards each, weight two hundred and twenty-five pounds per bale. The total price or cost shall be accurately ascertained by computation at the said rates at or before the time of delivery, and the Dry Goods Company agrees to furnish, make and lay the said paper, carpets and linoleum at the prices stated, in the rooms indicated therefor by the Ottawa Company, on the following terms and conditions:

"The Ottawa Company will pay the Dry Goods Company on the first day of April, 1914, the sum of eight thousand dollars, which, at the option of the Dry Goods Company, shall be a condition precedent to any delivery of carpets, and is to be in part payment of

the purchase price of said carpets in advance of their delivery and being laid, and the Ottawa Compny further will pay the Dry Goods Company on the fifteenth day of April, 1914, the sum of four thousand dollars, and the Ottawa Company is to furnish to the Dry Goods Company its own collateral bond or guaranty, with a Surety Company satisfactory to the Dry Goods Company bound thereupon, to the prompt payment of the said sum of eight thousand dollars on the first day of April, 1914, and the said sum of four thousand dollars on the fifteenth day of April, 1914, with interest thereupon at the rate of six per cent from the said respective dates until paid.

"When the Dry Goods Company begins to deliver and lay the carpets, the Ottawa Company will make and deliver to the Dry Goods Company its promissory notes for the balance of the purchase price, that is to say, the total cost or price, computed as aforesaid, less the sum of twelve thousand dollars to be paid as provided in the last preceding paragraph, which notes for the balance of purchase price shall be in four equal amounts, payable in thirty, sixty, ninety and one. hundred and twenty days, with interest at the rate of six per cent per annum from date, respectively, and shall be secured by a valid chattel mortgage to be made by the Ottawa Company upon the said carpets and linoleum so sold and delivered, as a first and only lien thereon, in favor of said Dry Goods Company for the payment of the said notes; such chattel mortgage to be in the usual form of chattel mortgages used upon the sale of furniture or like property in the said city of St. Louis.

"If at the time of delivery, or at any time before maturity of the notes, the Ottawa Company wishes to pay cash in full, it may do so without paying interest thereafter, and will be entitled to a release of the chattel mortgage after such payment is made in full, if the same has been delivered.

"Failure of the Ottawa Company to receive and accept the carpets when offered for delivery by the Dry Goods Company, or to execute and deliver the notes and

273 Mo.—25

chattel mortgage as security for the balance of purchase price, shall in nowise impair or lessen the duty and obligation to pay the said sum of twelve thousand dollars secured by collateral undertaking as aforesaid, but in that event the said sum of twelve thousand dollars shall be taken as liquidated damages for the failure of the Ottawa Company to comply with the terms of this agreement.

"In witness whereof, The said corporations have caused these presents to be executed in duplicate in their corporate names, by their presidents, respectively, with their corporate seals hereto affixed, attested by their respective secretaries, on the day and year first aforesaid."

The answer of defendant bonding company is also pertinent to the points raised, and which we will find it necessary to discuss. This answer, formal parts omitted, read thus:

"Now comes the Chicago Bonding & Surety Company, one of the defendants in the above styled cause; and for answer to the petition of the plaintiff herein denies each and every allegation therein contained.

"Further answering this defendant states that on the 18th day of March, 1914, the Ottawa Realty Company entered into a contract to purchase from the plaintiff certain goods, wares and merchandise, to-wit, certain carpets and papers, for a certain price. That by the terms of the said contract the Ottawa Realty Company agreed to pay for said goods, wares and merchandise in advance of the delivery thereof the sum of $8000 on April 1, 1914, and an additional sum of $4000 on April 15, 1914, and that it was further provided in said contract that a guarantee should be made as to the said payments of said cash on the said dates, and that by said contracts it was further provided that in addition to the guarantee, the plaintiff herein should have the right to withdraw from said contract and retain the said goods, wares and merchandise sold in said contract and not make delivery thereof in event the said cash payments were not made. Defendant states that pursuant

to the terms of the said contract it entered into a certain agreement with the plaintiff on the 18th day of 1914, by which said agreement it guaranteed to plaintiff that the said Ottawa Realty Company would make the cash payments as provided in the aforesaid contract between the said Ottawa Realty Company and the plaintiff. That the contract between the Ottawa Realty Company and the plaintiff was referred to and made a part of the contract and agreement between this defendant and the plaintiff. Defendant states that on the 1st day of April, 1914, the Ottawa Realty Company did not make the payment provided for in its contract with the plaintiff. Defendant states that thereupon, pursuant to the terms of the contract between the plaintiff and this defendant and pursuant to the terms of the contract between the plaintiff and the Ottawa Realty Company, the plaintiff had the option of performing said contract and delivering the said goods, wares and merchandise and holding the said Ottawa Realty Company and this defendant upon the said contract, or of withdrawing from said contract and refusing to go on with the same and refusing to deliver the said goods, wares and merchandise as provided for in said contract. This defendant states that on or about the 6th day of April, 1914, the plaintiff exercised its option to withdraw from the said contract and declined to make delivery of the goods, wares and merchandise purchased thereunder and that the plaintiff notified this defendant that it had exercised its said option in this manner.

"This defendant, for a further answer, states that by the terms of said contract between the plaintiff and this defendant, this defendant guaranteed the said payments by the Ottawa Security Company to plaintiff for goods, wares and merchandise sold to the said Ottawa Realty Company. That the first payment for $8000 became due on April 1, 1914. That no demand was made on the Ottawa Realty Company at said time for said payment, nor upon this defendant, nor was this defendant notified of any default of the Ottawa Realty Company in respect thereto, but on the contrary, this de-

fendant states that five days thereafter it was notified by plaintiff that the plaintiff exercised its option to refuse to deliver said goods, wares and merchandise to the Ottawa Realty Company, said option being so exercised after the first payment was due and before the second payment became due.

"Wherefore, Having fully answered, this defendant prays to be hence dismissed with its costs."

Upon the trial it was shown by plaintiff that both defendants made default in the payment of the sum of $8,000, which was agreed to be paid on April 1, 1914, and that defendants likewise made default in the payment of the sum of $4000, which was to be made on the 15th day of April, 1914. Following the default in the payment of the sum of $8000, being the sum which first fell due, plaintiff on the 4th day of April, 1914, next after such default, wrote to both defendants exercising its option to require the payment of $8000 in advance of the delivery and laying of any carpets. The letter to appellant herein is in all material respects a substantial rescript of that to the Ottawa Realty Company, and we need take up space with but one of these letters. The letter to the appellant Chicago Bonding & Surety Company, address, date and signature alone admitted, reads thus:

"Gentlemen: We beg to call your attention to the bond executed by the Ottawa Realty Company as principal and yourselves as surety to us, under date of March 18, 1914. We take this opportunity of advising you that we exercised our option to require the payment of $8000 in advance of the delivery and laying of any carpets, and that the Ottawa Realty Company defaulted and still is in default in making this payment. Under the conditions of the bond, your obligation to pay this sum has matured. We are enclosing you a copy of a letter which our attorneys have this day written to the Ottawa Realty Company."

Such further facts as shall become necessary in the course of our discussion of the case will be found set forth in the subjoined opinion.

Appellant bonding company, the sole appellant here, urges upon our attention four separate alleged errors, viz.; (a) that the court erred in giving to the jury a peremptory instruction to find for the plaintiff in the full penal sum of the bond; (b) that the court erred in refusing to give to the jury a requested peremptory instruction to find for defendants; (c) that the court erred in refusing to allow defendants to prove that none of the goods agreed to be sold by plaintiff to defendant Ottawa Realty company had ever been by plaintiff either delivered or tendered to the vendee; and (d) that the court erred in refusing defendants' request to instruct the jury that in the event of a finding for plaintiff, the verdict should be for nominal damages only.

*Damages Without Injury.*

Regarded from the viewpoint of the facts in this case these four assignments of error are practically identical. So far, at least, are they cognate that the solution of either one of them will inevitably decide this case. Since, however, it can hardly be denied that, as there was a conceded breach of the conditions of the bond sued on, the plaintiff is in any event entitled to nominal damages, we may look to see whether upon the pleadings and case made, plaintiff was entitled to anything more than nominal damages.

Plaintiff upon the trial offered the contract for the purchase of the goods in controversy; the bond sued on; showed default in making, upon the dates prescribed, the payments agreed to be made; proved its election to require payment of the $12,000 advance payment on the purchase price before it should deliver or lay any of the carpets, or other goods agreed by it to be sold, and thereupon rested. Defendant offered to prove that no part of the goods in dispute was ever delivered to defendants, or to either of them. This offer being refused defendants excepted, but they neither made nor offered to make further proof in the case.

We think it sufficiently appeared from the pleadings and proof of plaintiff that no such delivery or even offer of delivery was ever made by plaintiff. This may be deduced from the pleadings and from the facts that the letters of plaintiff to defendants advised the latter that it had "exercised its [our] option to require the payment of $8000 *in advance of the delivery and laying any carpets,*" as pursuant to the terms of the contract of sale, it was authorized to do. Plaintiff insists that it may upon such a state of the evidence recover the full penalty of the bond sued on, without showing delivery of the goods, or any offer to deliver them, without showing that the goods were made up or laid, and without showing any actual damage accruing to it from defendant Ottawa Realty Company's breach of the conditions of the contract. The assignments of error of defendants, each specifically, and in effect collectively, deny most strenuously the right of recovery of the full penalty of the bond upon these facts. Within the above respective contentions lies the only question presented upon this appeal.

We premise that it is among the conceded law of the case (a) that since the bond in suit referred to the contract, and the contract in turn referred to the bond, this bond is to be construed in the light of the terms of the contract (Forst v. Leonard, 112 Ala. 298; Sewing Machine Co. v. Winchel, 107 Ind. 260; Jordan v. Kavanaugh, 63 Iowa, 152), and (b) that the liability of the surety upon the bond here can in no event exceed that of the principal therein. [Stevens v. Partridge, 109 Ill. App. 486; Barrie v. Seidel, 30 Mo. App. 559.] So much being conceded, is plaintiff entitled to recover the full penalty of the bond? We think not.

Upon the premises conceded by plaintiff (or if not conceded by it, which the law of the case *concedes* for it), the case stands in all respects as if the vendee, though it agreed to pay one-half of the purchase price of the goods in advance, made default therein; whereupon the vendor, having by contract the right to refuse to proceed in the fulfillment thereof by a delivery of

the goods, does so refuse on account of the vendee's breach. What in such case is the measure of damages? Is it the full amount of the advance payment agreed to be made, or is it (upon proper pleadings and proof) the profit, if any, which the vendor lost by the vendee's breach, or, in short, is it the difference between what the goods were sold for, and the cost of procuring, or buying them on the market, and of cutting, making and laying them? We think this measure of damages is the profit, if any, which plaintiff would have made and not the full amount of the cash payment agreed to be made.

Even a casual examination of plaintiff's petition discloses that it sued in all respects as if the guaranty bond counted on were an unconditional and independent promise to pay a sum certain upon a day certain, thus disassociating it wholly from the contract of sale to which the bond itself refers as the sole actual consideration for its existence.

For, it will be noted that there is neither averment nor proof by plaintiff that it ever made these carpets, or laid them, or that it has ever delivered them, or any part thereof, or offered so to do. Some color would be lent to plaintiff's contention if it had cut these carpets and made them up to measure to fit the rooms of the hotel for which they were contracted; but nothing of the sort appears. On the contrary the inference is patent that nothing whatever has been done by plaintiff toward fulfilling the contract upon its part, save and except to demand and sue for its "pound of flesh." Exceptions to the rule which we are constrained to follow, will be found in the books and cases; but these exceptions are bottomed upon considerations germane to those we foreshadow above. In other words, they are cases wherein the vendor agrees to manufacture for and sell to the vendee special articles, which are of negligible value, or not readily vendible on the open market. In such a case, upon a breach of a condition precedent, and where by reason of having made the goods the vendor is damaged, he may tender them to the vendee, and on the latter's refusal to accept, hold them for the vendee, and

recover the full agreed price. [Black River Lumber Co. v. Warner, 93 Mo. 374.] But the instant case is not, upon the pleadings and proof, that sort of case. Granting (for the argument's sake at least, since the point does not confront us) that the necessity to cut and make up the carpets contracted for, so as to fit them to the rooms of a designated hotel, would, *caeteris paribus,* have made that sort of case of it, yet the difficulty and difference lie in the fact that it had not when the suit was brought reached the state which would warrant the application of the rule stated in the excepted cases. [Thornberry v. Thompson, 69 Mo. 481; Black River Lumber Co. v. Warner, supra.]

We are constrained to hold that *upon the case pleaded and proved,* plaintiff was entitled to nominal damages only. We are not saying that upon proper pleadings and proof plaintiff may not be entitled to recover the profits, if any, which it lost by the vendee's breach of the contract, which would seem to be the difference between the agreed price to be paid for the goods, and the cost of buying them upon the market and making them up and laying them down in the rooms for which they were intended. [Harrison Wire Co. v. Hardware Co., 97 Mo. 289; Black River Lumber Co. v. Warner, 93 Mo. 374.] But the latter point is not presented, and we are not called on to rule on it here.

There are a few isolated cases, for the most part meagerly reported, which seem to squint at the rule contended for by respondent. But a casual glance at the situation makes apparent the shocking injustice of a rule which permits the plaintiff to go out of court with both the money for the goods and the goods themselves, or, to adopt the graphic vernacular of appellant's learned counsel, to go out of court "with the goods in one hand and the money in the other, laughing the while in its sleeve at the unlimited follies of the law." [Kingsland Mfg. Co. v. Iron Co., 29 Mo. App. 526.] This situation is appreciated by respondent for its learned counsel advise us that such an insufferable contingency could be averted, by a cross-action for damages for nondelivery

of the goods, if payment having been made, such delivery should be refused. Such a suggestion loses sight of the facts (a) that it would necessitate two actions *for the same ultimate end,* where but one should suffice; (b) that thereby the resultant damages would be maximized rather than minimized, which latter, other things being equal, the law enjoins (Taussig v. Mill & Land Co., 124 Mo. App. 209; Frederick v. Willoughby, 136 Mo. App. 244.), and (c) that it would (as we read between the lines) result here in the doing of a wholly futile thing—in the expense and labor of making and offering goods to the principal in the bond, which its condition and situation render it unable either to accept or use. [Williston on Sales, sec. 566.] Even if the cases urged upon our attention as stating a different rule were plain and well considered (and they are neither), we would not be disposed to follow them. The rule here contended for by learned counsel for plaintiff is seemingly bottomed upon a statement of a unique rule by the learned author of Benjamin on Sales (l. c. sec. 762.), which rule is bottomed upon the single case of Dunlop v. Grote, 2 Car. & Kir. 153, decided by CRESSWELL, J., in the Liverpool Assizes, at *nisi prius,* and wherein the whole of the court's opinion is: "The plaintiffs are entitled to recover the whole sum, as it was agreed to be paid upon a day certain."

The present English rule, and the rule followed in many of the jurisdictions of this country, is thus stated by a well-known writer:

"The general rule of the English law and of many States in this country denies an action for the price unless the property has passed, and the reason for the rule is plain. As the seller still is owner of the goods, he ought not to be given also the price for them. His damage is the difference in value between what he now has, namely, the goods, and what he would have had if the defendant had not broken his contract, namely, the price. Nevertheless, a large number of States do not follow the English law in this matter. If the reason why the property in the goods has not passed to

the buyer is because the buyer wrongfully refused to take title when offered to him, according to the weight of authority, perhaps, in this country, the seller may recover the full purchase price." [Williston on Sales, sec. 562.]

In this State we have not followed the rule enunciated in the final sentence of the above excerpt, *save and except in cases wherein specific articles* not readily vendible on the open market were agreed to be manufactured by the vendor and sold and delivered to the vendee. We have, however, followed the rule of the last sentence of the above excerpt in cases wherein the subject-matter of the sale-contract was a specific article to be manufactured by the vendor for the vendee, and wherein the vendor had completed his contract and performed all that he was required to do, and have held that in such a case upon the refusal of the vendee to accept the goods an action would lie for the full contract price. In the latter event the vendor would of course hold the manufactured article for the vendee. [Black River Lumber Co. v. Warner, 93 Mo. 374.] And even in such a case we have also ruled that, *where the specified article had not yet been manufactured by the vendor,* the measure of damages upon a breach of the contract would be the difference between the contract price, or price agreed to be paid for the goods, and the cost of manufacturing the articles, including material and labor used therein or expended thereon. [Black River Lumber Co. v. Warner, supra.]

The error and logical futility of the rule upon which the instant judgment is bottomed is we think readily apparent, or if not patent, easily demonstrable. For if partial payment, as here adjudged and as plaintiff urges, be enforced, before title passes, or delivery is made or tendered, then by the same rule full payment under similar circumstances can likewise be enforced before the title passes, or delivery or tender thereof be made. If such full payment be adjudged and enforced in such a case (and the difference between full

payment and the facts of the instant case is only one of degree), the result in the end and in the last analysis would be exactly the same. For after the expense and delay of two actions, perhaps, the damages (or profits, if the vendor honestly fulfilled his contract without suit to compel him to do so), accruing to, or recoverable by the vendor, would be precisely those to which appellant contends the vendor here is entitled. This is so for the reason that if the vendor is permitted to recover the purchase price, before title passes, or delivery is made or tendered, he must then either (a) proceed to fulfill his contract by delivering the goods, or (b) if he refuse be sued for damages for his breach. If the vendor honestly avails himself of the first contingency and delivers the goods, he merely pockets his profits, which are in lieu of, and which merely equal the measure of, his damages upon the rule to which we have herein adhered. If he refuses to deliver the goods, he must return the money which he unlawfully received—for surely he cannot retain both goods and money (Kingsland Mfg. Co. v. St. Louis Iron Co., 29 Mo. App. 526)—and respond to the vendee in damages for breach of the contract to sell. For such latter breach the measure of damages is again the profits, if any, which would have accrued to the vendee by the fulfillment of the contract of sale, that is, the difference between the agreed price and the market price. By following either route we reach in the end an identical destination. In short, the only practical difference between the relief afforded by the rule applied *nisi* and that which we think should obtain, lies in the fact that in the one case two lawsuits are required, while in the other but one suffices. Moreover, it has been given as a reason against the rule which prescribes enforcement of payment before title passes, that the vendee should not have thrust upon him goods which he does not want and which he may be unable to use. [Williston on Sales, sec. 566.] But we need not take up space to examine the logic or morals of this latter reason. We deem the reasons stated and the authorities cited convincing and sufficient.

It follows that as there was neither allegation nor proof in this case that plaintiff had done any act whatever toward fulfilling the contract of sale under discussion here, except to demand the payment to it of $12,000, before it took any steps toward fulfillment thereof, the judgment here cannot stand.

Let it be reversed and remanded for proceedings consistent not inconsistent with what we have said herein. All concur.